EVERGLADE CYPRESS COMPANY, a Delaware Corporation, *Appellant*, vs. W. H. TUNNICLIFFE, as Liquidator of the STATE BANK OF ORLANDO & TRUST COMPANY of Orlando, Florida, *Appellee*.

148 So. 192.

Division B.

Opinion filed January 2, 1933.

*George Palmer Garrett,* for Appellant;
*H. M. Voorhis,* for Appellee.

TERRELL, J.—This suit was instituted in August 1931 for the purpose of establishing a preferred claim with interest, in favor of the Appellant, against the Appellee. There was an answer to the bill, testimony was taken, and on final hearing the relief prayed for was granted. Petition for rehearing was filed and this appeal is from the final decree and the order on the petition for rehearing.

The essential facts out of which this cause arises may be stated as follows: The State Bank of Orlando and Trust Company failed August 3rd, 1929, and was placed in the hands of the appellee as liquidator. At the time it failed it was vested with the following cash assets: $58,231.78 in its vaults, $55,850.21 in the Atlantic National Bank of Jacksonville, Florida, $76,845.20 in the National Park Bank of New York City, and in all other corresponding banks $15,831.70, making a total of $205,856.89. At the same time the Atlantic National Bank and the National Park Bank, each held a separate demand note against the State

Bank of Orlando and Trust Company in the sum of $200,-000, which were secured by $1,539,107.29 in securities held by the Atlantic National Bank.

When the State Bank of Orlando and Trust Company failed, the Atlantic National Bank and the National Park Bank set off the cash assets held by them to the credit of the State Bank of Orlando and Trust Company against their demand notes of the latter Bank. A sufficient amount of the collateral security held by the Atlantic National Bank was reduced to cash, to pay the balance due on said demand notes and the balance of said security was returned to the liquidator. The preferred claims filed with the liquidator of the State Bank of Orlando and Trust Company aggregated $142,022.

The Appellant being a depositor of the State Bank of Orlando & Trust Company, on August 2, 1929, drew its check on said Bank for $1250, in favor of Hillsborough Lumber Company who promptly deposited it with the First National Bank of Tampa for collection. The First National Bank of Tampa forwarded said check to the State Bank of Orlando & Trust Company where it was received August 3, and on the same date charged to the account of the drawer. On the date received, the drawee bank drew its remittance draft on the National Park Bank of New York to cover this and other items received by it from the First National Bank of Tampa. The First National Bank of Tampa immediately forwarded this remittance draft to the National Park Bank where it was dishonored and payment refused because of the failure of the State Bank of Orlando' & Trust Company.

Out of this state of facts it was admitted that the Appellant was entitled to have its claim decreed to be preferred so the final decree is not challenged on that point. The question presented here is whether or not the Atlantic National Bank and the National Park Bank were legally

authorized to set off or apply the current checking accounts of the State Bank of Orlando & Trust Company to the payment of their demand notes, as against the right of Appellant to subject said current checking accounts to the payment of its preferred claim and if such set off was unauthorized can Appellant now trace its claim against said accounts to the collateral security returned to the liquidator by the Atlantic National Bank and have it paid from the proceeds of said collateral security. If this cannot be done the preferred claimants cannot be paid in full as the balance of the cash assets must be prorated among them.

The answer to this question depends on the application of the doctrine of set off, a doctrine which did not exist at the common law but was borrowed from the doctrine of compensation of the civil law. It is statutory in our country and is provided in this state by Section 2660 Revised General Statutes of 1920 (Sec. 4326 Compiled General Laws of 1927). Set off at law and in equity is the right which exists between two parties, each of whom under an independent contract, owes an ascertained amount to the other, to set off their respective debts by way of mutual deduction, so that, in any action brought for the larger debt, the residue only, after deduction, shall be recovered. 24 R. C. L. 792.

The very essence of and basis for set off is mutuality of claims, that is to say, claims existing between the same parties and in the same right. Section 2660 Revised General Statute of 1920 supra is predicated on this quality. In the case at bar the claim of Appellant is admittedly preferred, if that be true it partakes of the nature of a trust fund, is devoid of the attribute of mutuality and is not held "in the same right" as the claim of the Atlantic National Bank or the National Park Bank against the State Bank of Orlando and Trust Company and cannot be de-

feated by setting off the current checking accounts of the latter against the demand notes of the former banks.

It is well settled that funds on general deposit in a bank are the property of the bank but the right of the bank in such property is qualified and does not always amount to a lien on it. A lien arises from contract or from operation of law. It does not by the customs and usages of banks extend to the money left on deposit with them. The banker's lien is confined to the securities and properties which have been placed in the bank's custody as collateral and its credit is extended on the strength of such collateral. Niblack vs. Park National Bank, 169 Ill. 517, 48 N. E. 438, 61 A. S. R. 203, 39 L. R. A. 159; 3 R. C. L. 588.

The current checking accounts of the Orlando State Bank & Trust Company on deposit in the National Park Bank and the Atlantic National Bank were subject at any and all times to withdrawals. It was not in contemplation nor was it in any way considered as security for the demand notes brought in question. The provision in the notes securing them in part, with any funds on deposit is good as between the maker and the bank but is not effective as against preferred claimants. The drawing and delivery of a check against either of these checking accounts was, when accepted by the bank, an assignment to the holder of the check of so much of the fund in the checking account as the face of the check called for. The status of the check and of the parties is fixed as of the date of the presentation of the check to the bank and acceptance by it for payment which must be prior to the closing of the bank.

The check representing the funds involved in this litigation was drawn and presented for payment prior to the closing of the drawee bank and prior to the time the National Park Bank and the Atlantic National Bank set off their demand notes against the checking accounts of the drawee bank. The set off under such circumstances was

not authorized and is never warranted against a trust or special fund. The right of set off against the liquidator of a bank is to be governed by the state of things existing at the moment of insolvency and not by conditions created thereafter. Chipley State Bank vs. McNeill, 77 Fla. 827, 82 So. 292.

Having reached this conclusion it follows that the preferred claim of appellant may be paid from the proceeds of the collateral security returned to the appellee by the Atlantic National Bank if there are no other funds in the hands of the liquidator available for that purpose. The mingling of trust funds or special funds with other funds held by the liquidator does not defeat the owner's title because the funds are not ear marked. Such a mingling extends the trust to all the funds of the bank. Edwards vs. Lewis, 98 Fla. 956, 124 So. 746; Myers vs. Matusek, 98 Fla. 1126, 125 So. 360; Myers vs. Federal Reserve Bank, 101 Fla. 407, 134 So. 600; City Bank of Ft. Lauderdale vs. Hart, 102 Fla. 529, 136 So. 446; American Express Company vs. Cochrane, 103 Fla. 426, 137 So. 696, 3 R. C. L. 595.

Cross assignments of error filed by Appellee challenge that part of the final decree allowing interest on Appellant's preferred claim. On this point the dominant rule is that in the absence of controlling statute, interest should not be allowed on trust funds, escrow funds, special funds, preferred claims or other funds held by banks, trustees, liquidators or other agents where the relation of creditors and debtor does not exist. Leach vs. Sanborn State Bank, 210 Iowa 613, 231 N. W. 497, 69 A. L. R. 1206. Note 1213 citing many cases, Merchants National Bank vs. School District No. 8, 94 Fed. 705; First National Bank of Forsythe, Montana, vs. Fidelity and Deposit Company, 48 Fed. (2nd) 585. The rule as thus defined has been approved in this jurisdiction. Newsome vs. Tampa Shipbuilding and

Engineering Company, 100 Fla. 1173, 131 So. 115; Bryan et al. vs. Duncan, 106 Fla. 357, 143 So. 353.

The soundness of this rule cannot be controverted, though it is not without its exceptions. The theory on which interest is allowed on any fund, is that it is held in such way that it may be put to work and earn it, that is to say that the relation of debtor and creditor exists between the owner and user of the fund rather than that of fiduciary or trustee. If the fund so held is in such condition that all claims against it, including interest, may be paid in full, then interest may be allowed, or if the fund held is for some reason earning interest, such may be allowed but no such contingency is shown to exist in this case.

For the reasons announced in this opinion the judgment below is reversed.

WHITFIELD, P.J. AND DAVIS, J., concur.

BUFORD, C.J. AND BROWN, J., concur in the opinion and judgment.

ELLIS J., concurs specially.

ELLIS, J. (Concurring).—The Everglades Cypress Company in this suit maintained that its claim for $1250.00 against the State Bank of Orlando & Trust Company, which was taken over by the Comptroller on August 5, 1929, to administer its affairs, was a preferred claim and as such should be paid from the assets of the Bank with other preferred claims in preference to the claims of the general or ordinary creditors.

The Liquidator admits the character of the claim as one entitled to be classed as preferred but says that there are not enough funds in hand chargeable with a trust to pay in full all preferred claims.

The complainant denies that statement and alleges that all claims of the preferred class presented within the time allowed by law amount to $174,144.00 including those contested and uncontested, that the Bank had on hand when it

closed cash in hand and sundry balances and cash items amounting to the sum of $214,890.39. By stipulation entered into between the parties it was agreed that the cash on hand and on deposit in other Banks amounted to the sum of $205,758.89, and securities pledged with other Banks to secure loans. Those securities, called bills receivable, amounted to $1,566,424.99.

The cash items and deposits in other Banks were made up as follows:

Cash in vaults...........................$58,231.78
Deposit with Atlantic Natl. Bank........ 55,850.21
Deposit with National Park Bank of
    New York............................ 76,845.20
Deposit with Eleven other Banks named... 14,831.70
                                        _____
                                        $205,758.89

It was also agreed that the Bank owed the Atlantic National Bank the sum of $200,000.00 evidenced by two demand notes of one hundred thousand dollars each and it owed the National Park Bank the sum of $200,000.00 evidenced by a demand note for that amount and that the Atlantic National Bank held the collateral as security for the payment of all three notes. The exhibits attached to the stipulation show two notes to the Atlantic National Bank for $100,000.00 each and one note to the National Park Bank for *$300,000.00* instead of $200,000.00. That variation between the agreed statement of facts and the exhibits seems not to have merited any explanation. One of the notes to the Atlantic National Bank showed seven payments on account of that note from Sept. 14, 1929, aggregating $95,197.50, and the other showed four payments from August 15, 1929, aggregating $84,834.27 and one payment on July 31, 1929, a few days before the Orlando Bank closed, of $8,736.25, making a total of $93,570.52. The indorsement of the note of, $300,000.00 to the National Park

Bank shows payment received Nov. 25, 1929, signed by the Chase National Bank of New York.

It is stipulated that when the Orlando Bank closed both the Atlantic National Bank and the National Park Bank "offset the deposit" of the Orlando Bank in the two Banks respectively against the notes held by them against the Orlando Bank. The indorsements on the three notes do not show that transaction. It is also agreed that after such deductions were made "the remainder of said indebtedness due" the two Banks "was paid by collections received on said collateral to the extent of $199,149.63. and money paid by the Liquidator of The State Bank of Orlando & Trust Company to said loaning banks."

Now if the credits appearing on the backs of the two notes held by the Atlantic National Bank do not include the deposit of the Orlando Bank then it appears that the Atlantic National Bank was overpaid $44,618.23 but if those recorded payments do include such deposit then there remained due on the two notes $11,231.98. If the deposit held by the National Park Bank was at once set off by it against the note which it held of the Orlando Bank, and which the terms of that note authorized it to do, there was left a balance due that Bank of $123,154.80 which added to the assumed balance due the Atlantic National Bank of $11,231.98 there remained a balance due both Banks of $134,386.78, but according to the stipulation the sum of $199,149.63 was collected on the collateral "bills receivable" and paid over to those Banks, a discrepancy of $74,450.22, which also seems to have merited no explanation.

The stipulation also recites that after deducting $199,-149.63 collected on the collateral to pay the two Banks there remained collateral "amounting to approximately" $1,350,000.00 which shows a discrepancy of $17,275.36 which is not explained.

On the other hand, if all the credits of money paid ap-

pearing on the two notes held by the Atlantic National Bank represented collections upon the collateral security held by it after deducting the deposit of $55,850.21 and if likewise collections on such collateral were paid to the National Park Bank after deducting the deposit in that Bank it would have required a sale of $267,304.80 of collateral. If the cash in the vaults and deposits in other Banks amounting to $73,063.48 in all were used to pay the two Banks then only $194,241.32 of collateral was necessary to be sold, another slight variance of only $4,908.31 appears which the Liquidator failed to explain in the stipulation. That difference however is four times greater than the complainant's claim.

The above figures are given by me to show the careless, inaccurate, and entirely inefficient and unsatisfactory statement of the Liquidator of the Orlando Bank in giving an account of his stewardship of the Bank's funds to a person entitled to and who admittedly holds against the Bank a preferential claim. A Liquidator is a mere custodian of trust funds, the clerk and agent of the Comptroller performing his duties under the supervision of that executive officer, and should be at all times able and willing to give an accurate account of his stewardship to the persons who are legally and equitably entitled to it and the funds in his possession.

Approximations and vague general statements concerning the administration of trust funds may be acceptable in some circumstances but they may not be said to be satisfactory or even reasonable when a court requires a frank and complete account of a trustee's stewardship.

There is much irrelevant discussion and "learned talk" about what portion of a defunct Bank's deposits in other Banks may belong to it and to what extent such credits are assets of the defunct bank, but the answer admits that when the bank closed it had $214,000.00 cash and cash items

and balances, eight thousand two hundred dollars more than the bill charged and the stipulation shows. After deducting the deposits in the Atlantic National Bank and the National Park Bank there remained $85,087.00 to which should be added $1,350,000.00 of returned securities making a total of $1,435,087.00 of assets.

Of the returned securities the stipulation does not show what portion has been collected but stated that from all sources the Liquidator has collected $459,451.82 which added to the cash in vaults and on deposit in other banks would make a total of more than one half a million dollars. It is admitted that the total of preferred claims filed with the Liquidator amounts to $142,022.69, so according to the admissions of the Liquidator there are funds enough to pay the preferred claim of the complainant.

I agree with the opinion of Mr. Justice TERRELL that the decree should be reversed, but I think it should be done upon the showing made by the Liquidator in his answer and in the stipulation entered into between him and complainant's solicitor.