PENINSULA TERMINAL CO. v. CHARLES W. ZARING, *et ux.*

No. 1.

151 So. 514.

En Banc.

Opinion Filed December 4, 1933.

Rehearing Denied Jan. 2, 1934.

· *S. P. Robineau* and *Garland M. Budd, Jr.,* for Appellant; *Mitchell D. Price, Charles W. Zaring* and *Robert S. Florence,* for Appellee.

Per Curiam.—In this case appellees filed a bill in equity against the appellant, Peninsula Terminal Company, seeking to rescind an executory contract for the purchase of certain described real estate. The grounds relied on for the rescission were certain alleged fraudulent representations charged to have been made by one Richard A. Johnson, an alleged agent of the vendor, as an inducement for the entering into the contract by the vendees. The answer of the defendant denied the agency of Johnson with respect to the representations and voluminous testimony was taken on that issue. The relationship of the supposed agent, Johnson, to the defendant Company, concerning the subject matter of the contract and the representations involved, therefore became one of the material questions which the Chancellor was required to decide in this cause as a question of fact.

The Master, appointed and empowered to make findings of law and fact, found that the contract of purchase entered into by the complainants, Charles W. Zaring, and his wife, Helen Zaring, were entered into as a result of misrepresentations of material facts chargeable to the defendant company; that the lot or property contracted to be sold was and is not suitable nor desirable for the purpose for which it was represented and undertaken to be sold; that it would be contrary to equity and good conscience to enforce the contract as entered into by Zaring and his wife by requiring Zaring to pay the balance of the purchase

price; that on the contrary complainants should have the relief of rescission prayed for in the bill.

The master's findings were approved by the Chancellor in all particulars and a decree was entered by the court which released and relieved the complainants from any and all liability arising out of the rescinded contracts and promissory notes executed contemporaneously therewith and as part of the consideration therefor. In addition to relief by way of rescission, the court entered a further decree adjudging that the defendant, Peninsular Terminal Company, repay to the contracting parties the sum of $7,053.34 representing moneys advanced to the defendant company under the rescinded contract and the interest thereon. An equitable lien upon the vended property for the amount of this money decree was adjudicated in complainant's favor and foreclosure of same ordered to satisfy the amounts determined to be due. The appeal is from the final decree.

A majority of the Court are of the opinion that the decision of this case is controlled by that long line of authorities emanating from this Court wherein it has been declared that the findings of a master in chancery, approved by the Chancellor and sustained by him as the basis for his final decree, will not be reversed in this Court unless it is made to appear that the findings of fact are clearly erroneous. See E. O. Painter Fertilizer Co. v. Foss, 107 Fla. 464, 145 Sou. Rep. 253 and cases cited. It is further the opinion of a majority of the Court that the findings of the Chancellor in this case have not been demonstrated to be clearly erroneous, in view of the fact that there is substantial, competent evidence to sustain the complainant's contention that one Richard A. Johnson, while acting as agent of the defendant company, did in fact and in law, as such agent, make the false and fraudulent misrepre-

sentations charged as having been made by him and calculated to deceive complainants in the premises.

Included in the decree was an allowance of interest at the rate of eight per centum per annum from the date of the making of the payments made by complainants on the contract allowed to be rescinded, instead of interest from the date of the institution of the suit by which the rescission was sought to be accomplished. The amount of interest decreed was $2,138.34 which was computed as from the date of the payments made under the contract and not from the date of the rescission, which in this case was the date of the institution of the suit. To the extent that the allowance for interest exceeds an amount computed from the date of the institution of the suit, the decree is erroneous and should be reversed with directions to modify the decree by allowing interest on the sum of $4,815.00, the aggregate of complainant's payments, only from the date of the institution of this suit.

In administering the remedy of rescission and cancellation of contracts for misrepresentations occurring in the inducing factual situation which has led up to the execution of the particular contract whose rescission and cancellation is sought, the fundamental theory on which equity acts is restoration, and in order to obtain such relief the complainant must offer to do equity and must do equity toward the defendant. Everglade Cypress Co. v. Tunnicliffe, 107 Fla. 675, 148 Sou. Rep. 192; Bryan v. Duncan, 106 Fla. 357, 143 Sou. Rep. 353. In the present case the first step in complainant's election to disaffirm the transaction in which the contract and notes sought to be rescinded and cancelled were given, was the institution of the present suit and no interest on the amounts paid under the contracts should be decreed for periods of time prior to the date of

the institution of the present proceeding, because the rescission and cancellation which has been brought about by the decree that has been entered, does not relate back further than the date of the institution of the suit in this case.

Final decree affirmed in part and reversed in part, costs of appeal to be charged in equal proportions against the parties.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—In December, 1925, the appellees entered into a contract with the appellant to purchase Lot 4 in Block 3 of Commercial Subdivision of Harbor Terminal, property of the Peninsula Terminal Company, for the sum of $12,000.00. They paid $3,000.00 cash and made their three promissory notes due six, 12 and 18 months after date for the sum of $3,000.00 each, at which time the parties executed between themselves a contract and agreement of purchase and sale.

The first note became due and the maker asked the payee for an extension of six months in which to pay the note. The payee declined to grant the six months extension on the full amount, but did agree that if the maker would pay one-half the note, $1,500.00, and interest then due, it would extend the balance of that note for the six months period. This proposition was accepted by the maker and the $1,500.00 with interest due at that time was paid.

Thereafter, default occurred in payments under the terms of the note and the contract. On December 2, 1926, when the second note and the deferred portion of the first note were about to become due the complainants and the other two parties who had purchased lots at the same time and

under the same conditions wrote to the vendor, appellant here, a letter, as follows:

"Miami, Fla., Dec. 2, 1926.

"Peninsular Terminal Company,
"846 Lincoln Road, Miami Beach.

"Dear Sirs: Owing to the fact that people who owe us are not meeting their payments we find that we shall not be able to meet the coming payment on our Peninsular Terminal lots.

"When we made this purchase we were told that any client of Fisher, if dissatisfied, could return the property and get his money back. Of course, we would prefer that this be done because we all happen to be exceedingly hard up just now and it looks as though we are going to remain in this distressed condition for an indefinite time.

"If this cannot be done, then we suggest that we turn back two of our lots in full payment for the third. We understand from Mr. Johnson that the price of these lots has been advanced to $13,500 and we have each paid you $4,500—or a total of $13,500. In addition we are turning back lots now worth $3,000 more than you would receive from us if we were able to pay which looks like good business for you.

"We suggest that we retain Lot 4, Block 3.

"Awaiting your early reply, we are

"Very sincerely,
"(Signed) GEO. M. SMITH,
"CHARLES W. ZARING,
"GERALDINE M. MITTAG,
"By H. M. MITTAG, Attorney."

And thereafter, on January 30, 1927, they wrote another letter, as follows:

"Mr. W. A. Kohlhepp,

"Fisher Building, 846 Lincoln Road, Miami Beach, Fla.

"Dear Sir: Several weeks ago we called on you with reference to the Peninsular Terminal lots. We had previously written you a letter regarding the lots and you promised to give us an answer in about ten days in which time you hoped to be able to lay the matter before your directors.

"Not having heard from you we assume you have not yet brought the subject to their attention and in order that they may clearly get our position we request that you lay before them the following facts:

"*First.* We each purchased, or contracted to purchase, a lot in your Peninsular Terminal Island through Mr. Richard Johnson, your agent for that purpose.

"*Second.* In persuading us to sign these contracts Mr. Johnson stated that Mr. Fisher was so sure of the success of this project that he had stated that if any lot purchaser was dissatisfied, he, Mr. Fisher, would repay him his money with interest. You stated at our meeting that if we could produce this offer in writing signed by Mr. Fisher we would get a check in five minutes.

"Of course, we did not have this offer in writing, but Mr. Johnson did so state. At a later time when we spoke to him about it he said that Mr. Fisher did make the offer and was preparing to publish it as an advertisement, but that Merrick and Young of Coral Gables and Hollywood had objected so strenuously that he had decided not to make the offer public.

"*Third.* Mr. Johnson further represented to us that the Munson Line had wanted to purchase docking and warehouse space on the island; that a choice of three different sites had been submitted to them and that by telegraph they had bought all three sites.

"*Fourth*. Mr. Johnson further represented to us that the lot price of $12,000 had been fixed by himself, yourself and a Mr. Chase.

"*Fifth*. Mr. Johnson further represented that he himself owned a number of lots on the island and suggested that we buy lots next to one of his so that the four lots could form a single block or group which would give us access to two streets and considerably enhance the value of each. We let him pick the lots next to his and we always thought, until recently he admitted otherwise, that we controlled four lots, one of which was owned by Mr. Johnson.

"*Sixth*. Mr. Johnson further represented to us that Mr. Fisher was an ardent polo player and numbered among his polo friends certain English polo players of high social position who were there, or recently had been, at the Beach playing polo. He stated that Mr. Fisher had sold these Englishmen a dozen or more Peninsular lots.

"Other material representations were made at the time by Mr. Johnson which we are looking into. You will know whether these various representations are true or not true. We believed them to be true and they were controlling inducements to our contracting to buy the lots and making our second payment.

"We ask you to investigate these statements. If you find them to be true statements of facts we have nothing further to say; but if you find otherwise we feel that you should admit our right to rescind these contracts, take back your lots and return us our money.

"We request a prompt reply to this letter.

             "Very truly yours,

"(Signed) CHARLES W. ZARING,

         "DR. GEO. M. SMITH,

         "HENRY W. MITTAG,

           "Atty. for GERALDINE M. MITTAG."

Then, on May 19th, 1927, the attorneys for these purchasers wrote a letter to the vendor as follows:

"Peninsular Terminal & Transport Co.,

"Fisher Building, Lincoln Road, Miami Beach, Fla.

*"Attention Mr. Walter A. Kohlhepp.*

"Dear Sirs: We represent George M. Smith, Charles W. Zaring and Henry W. Mittag in a transaction relating to the sale to them of three lots in your Peninsular Terminal Development.

"These lots, according to our information, were sold through an agent, now in your employ. Our clients claim this agent, in order to induce them to purchase, made certain representations of fact which are not only false, but were known to be false and they, relying upon said representations purchased the property and have paid something like $4,500.00 on each lot.

"From the facts stated to us, it seems that our clients have a good cause to rescind their contracts and to demand the return of the payments made by them. We understand that this agent was not only in your employ at the time these representations were made but that you have retained him in your employ even since you knew the character of the representations made in order to effect these sales.

"We are advised that they have already previously advised you in writing of their rescission and have demanded the return of the moneys paid by them upon these lots, but in order that there may be no dispute concerning same, as their attorneys we hereby advise you that they have rescinded said contracts and that they hereby demand the return of all moneys paid upon said lots, to-wit $4,500.00 upon each lot or $13,000.00.

"The writer of this letter is personally acquainted with the purchasers above named and has been personally ac-

quainted with Charles W. Zaring for fifteen or twenty years. They are all men of high standing in the community and men who would not seek to take advantage in the decline or fall of a market by making any false representations in regard to their property. In fact, Mr. Zaring, about the time he purchased this property advised others of the fact that he had purchased same and of the fact that a large steamship line purchased three lots for terminal purposes in said subdivision and imparted other information obtained from your agent. One of Mr. Zaring's friends, acting upon this information, also purchased a lot.

"Trusting that a return of the moneys can be secured without the necessity of litigation, we are

"Yours very truly,

"(Signed) MITCHELL D. PRICE AND ROBERT J. BOONE,

"By MITCHELL D. PRICE."

No action was taken complying with requests contained in these letters and on March 15th, 1928, the appellees here, complainants in the court below, filed their bill of complaint to cancel and rescind the contract, to procure a decree for the refund of the money paid under the contract and to have a lien declared upon the lots described in the contract to enforce such repayment. A copy of the original contract was attached to the bill of complaint. Rescission was sought upon the ground of fraud in the procuring of the contract by an agent of the vendor. The acts alleged as constituting the fraud were in effect the same matters set forth in the letter of January 30, 1927, quoted hereinbefore. The defendant answered denying the agency of Johnson or that he was generally known as the agent of the vendor, or that it held him out as its agent, and alleging on the contrary in effect that Johnson was a dealer in his own behalf, being a general real estate broker; and also denied that

any false representations were made on behalf of the defendant by Johnson in the course of his employment by the defendant. The answer contained the counter claim or cross bill wherein the defendant sought foreclosure of the contract for deed entered into by the complainants and alleged as grounds therefor default in payment.

On the 14th of December, 1928, complainants filed replication to the affirmative portion of the defendants' answer wherein they set up that certain improvements promised in the contract had not been provided and later, by amendment on October 27, 1929, alleged that defendant does not have a marketable title to the premises in question because of the reservation of certain mineral, phosphate and petroleum rights in the premises by the Trustees of the Internal Improvement Fund.

In February, 1930, an order of reference was entered referring the cause to a Special Master and on March 17, 1931, the Master filed his findings in which he recommended a decree in favor of the complainants. The defendant filed exceptions to the report. The court denied defendant's exceptions and granted the relief prayed in the original bill, of complaint, from which decree this appeal is taken.

The matters of defense alleged in the replication to that portion of the answer seeking affirmative relief were not considered in the findings of the Master, nor in the decree of the court below, except insofar as it was alleged that the defendant had failed to make certain improvements which it was agreed in the contract between the parties to make concerning the water supply and electric lights. The agreement of the defendant in this regard, as shown by the contract, was:

"The grantor hereby agrees and binds himself, its suc-

cessors and assigns, to construct suitable, proper and convenient water and electric light facilities for the real estate hereby conveyed in the street adjacent thereto, or along the rear line thereof, and hereby expressly reserves to itself, its successors and assigns, the right to alter and change at any time and from time to time the grade of any property shown on said plat, including the property herein conveyed, and for such purpose to add to and/or take from said property any soil, rock, fill and/or other surface material."

This was not a dependent covenant and if there was a breach of the covenant such breach constituted the ground or cause of action for an independent suit for breach of contract, but such breach of the contract as written would not constitute ground for rescission and cancellation.

This leaves us to consider whether or not the other grounds for rescission as alleged in the bill of complaint and as proved were sufficient grounds for cancellation and rescission. In the first place I will say that we do not consider it necessary to determine whether Johnson was the agent of the vendor or not, because I do not think that the record discloses grounds for rescission and cancellation, even if Johnson was the agent and acting within the purview of his employment.

First, it contended that the contract should be cancelled and rescinded because Johnson represented that he had bought and then owned a number of lots in the subdivision. If Johnson made this representation it was immaterial because there is nothing in the record to show that Johnson's ownership of lots in the subdivision would have added anything whatever to the value or desirability of the lot purchased by the complainant.

Next, it is contended that cancellation and rescission should be granted because Johnson "stated and represented

to the said Charles W. Zaring that the said Peninsula Terminal Company was largely owned and controlled by Carl G. Fisher, a responsible citizen and prominent real estate developer of Miami Beach, Florida, and that said Carl G. Fisher had so much confidence in the subdivision above described that the said Fisher had arranged to have the said Company take back any lots sold if the purchasers became dissatisfied and in such event to return to said purchasers any moneys paid on account of the purchase price of said lot with 6% interest. That the said Richard A. Johnson on or about the 20th day of December, 1925, aforesaid further stated to the said Charles W. Zaring that the said Fisher had prepared for publication an advertisement which contained said offer of said company to take back lots from dissatisfied purchasers and to return with interest all moneys paid on account, but had refrained from publishing said advertisement in the public press at the request of certain other prominent developers, to-wit: George Merrick of Coral Gables and Joseph Young of Hollywood." This representation, if made by Johnson as the agent of the vendor, the defendant in the court below, became irrelevant and immaterial because after such representation was alleged to have been made the complainants entered into a certain contract setting forth the conditions and terms of the purchase and sale and no such agreement or condition was contained therein, and Mr. Zaring in his testimony concerning the execution of the contract, testified that Mr. Johnson presented the contract to him at his office of the company; that the contract had already been executed by the company; and then he said: "I read it through; saw that it conformed to our agreement. He also showed me the notes, introduced me to a Notary and I think there were two witnesses there and he identified me. The notary took

my acknowledgment and I left. I brought my copy of the contract home which is annexed to the bill." * * * "I never spoke to anybody in the Peninsula Terminal Company except to Mr. Johnson on this occasion and the statement that I acknowledged this to be my signature."

It is next contended that the false representation made by Johnson: "that a choice of three dock sites in said Commercial Subdivision had been offered by said Peninsula Terminal Company to Munson Steamship Company and that the said Munson Steamship Company had purchased all three said sites and would erect forthwith docks or piers on said sites," constituted grounds for rescission and cancellation.

The record shows that the complainants were never acquainted with Johnson until about the 20th of December, when Johnson approached Mr. Zaring, Mr. Smith and Mr. Mittag on the veranda of the Anglers Club at Miami Beach and soon entered into a conversation with them in regard to purchasing lots in this subdivision, which conversation soon resulted in each of the three gentlemen named agreeing to purchase one lot each, as seen by the plat presented by Johnson; that they went into the club house and each gave Johnson the initial payment of $3,000.00 on the respective lots purchased by each.

I think that under the authority of the opinion and judgment in the case of Pepples v. Rogers, *et al.,* filed in this Court March 16, 1932, reported in 140 Sou. 205, and authorities there cited, that this was not a representation which would constitute ground for rescission and cancellation. In that case it was said:

"The general rule is that in order for a misrepresentation to be a ground for rescission and cancellation, it must be with reference to come material fact or thing, unknown to

the complainant, either from his not having examined or for want of opportunity to be informed, or from his entire confidence reposed in the defendant, and such confidence should be a right growing out of relations of a fiduciary character existing between the parties. The courts will not ordinarily protect those who, with full opportunity to do so, will not protect themselves. Glass v. Craig, 83 Fla. 408, 91 So. 332; George E. Sebring Co. v. Skinner, 100 Fla. 315, 129 Sou. 759; Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408."

In the case now under consideration the complainant, Zaring, had ample opportunity to determine whether or not this representation alleged to have been made by Johnson was true or false. There was no reason for him to rely upon the statement made by Johnson as he knew nothing of his antecedents or responsibility. It will also be noted that the material part of this representation, if it may be said that there was anything in the representation which could add to the value of the property purchased by the complainants, was that the steamship company would in the future though forthwith erect docks and piers on the lots purchased. The mere fact that a steamship company had or had not purchased lots in a subdivision would not affect the value of the lots.

The representation here made is to be differentiated from that which was the basis of cancellation and rescission in the case of Holgate v. Jones, 94 Fla. 198, 113 Sou. 714. In that case it was alleged that "the complainant did falsely and fraudulently represent to this defendant certain present and past facts which were peculiarly within the knowledge of this complainant and could not have been ascertained by this defendant by investigation, to-wit: that the Florida East Coast Railway Company had definitely decided to

erect its new terminal station between 29th and 36th Streets, facing North along Miami Avenue and that this information from said railway company had been given to complainant through its agent, Frank J. Powers, by one of the employees of said railway company who had said information, and as to the truth of this information the defendant could not be advised but solely relying on the statements of the complainant as being the truth, and believing same, he executed said notes and mortgage as alleged in the bill of complaint," etc. There was nothing whatever to have precluded Zaring from finding out the truth in regard to the alleged representation made by Johnson. After that conversation, and before he signed the notes, he went to the office of the vendor; there he read the contract prepared and executed by the vendor; found, according to his own testimony, that that contract correctly stated the terms of the agreement, and signed it in duplicate, carrying a copy of same home with him. He, at the same time at the office, signed the three notes, each being an unconditional promise to pay one of the installments mentioned in the contract. Six months later he found himself unable to meet the first maturing note and asked for an extension of time. He was granted an extension as to one-half of the amount of the note and paid the other one-half with interest then due on deferred payments, and not until the following December does the record disclose that he made any inquiry, or was materially interested in the truth or fallacy of either of the alleged representations.

I think that on authority of the opinion and judgment in the case of Pepples v. Rogers, *et al., supra,* and cases there cited, the decree should be reversed and the cause remanded for further proceedings.