LEWIS, J.
 

 The Department of Financial Services (“DFS”), as the receiver of First Commercial Insurance Company (“FCI”) and First Commercial Transportation and Property Insurance Company (“FCT”), seeks review of two non-final orders holding that Branch Banking and Trust Company (“the bank”) was entitled to offsets pursuant to section 631.281, Florida Statutes (2009). In the two orders on appeal, the trial court held that the bank was entitled to offset the balances owed on loans to the insurance companies’ affiliates and principals against the funds held in certificates of deposit (“CDs”) that were pledged as collateral for those loans. One order concerned the parties’ rights to funds held in FCI’s name, and the other concerned their rights to funds held in FCT’s name. These appeals were initially consolidated for the purpose of oral argument only; we now sua sponte consolidate them for the purpose of this opinion.
 

 DFS argues that the trial court erred in both cases by granting offsets where there was no mutuality of debts, as required by section 631.281. Additionally, DFS argues that, in any event, the trial court violated its right to procedural due process by determining the bank’s right to offsets without allowing time for DFS to complete discovery and without holding an eviden-tiary hearing. Finally, DFS argues that its right to procedural due process was violated for the additional reason that, in the case concerning FCT, the trial court held that the bank was entitled to offsets that it did not request. We conclude that the trial court violated DFS’s right to procedural due process and that its decision to grant offsets was at least premature. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
 

 There were five CDs at issue in these cases. In both cases, the bank filed a “notice of claim,” asserting entitlement to
 
 *832
 
 the CDs.
 
 [1]
 
 Two of the CDs belonged to FCI, and three belonged to FCT. According to the bank, FCI and FCT pledged their respective CDs as collateral for loans the bank made to various affiliates and principals. Additionally, in the case concerning FCI, the bank generally alleged that all of FCI’s loan obligations to the bank were in default, as the court had previously found. The bank attached a chart indicating that some loans had been made directly to FCI, rather than to its affiliates and principals. Those loans, however, were not subject to the pledges at issue. In the case concerning FCI, the bank requested enforcement of its rights as a secured creditor and, alternatively, offsets pursuant to section 631.281. In contrast, in the case concerning FCT, the bank sought enforcement of its rights as a secured creditor only. In both notices of claim, the bank requested that the trial court establish entitlement to the CDs, although the bank also indicated that its notices were offered as responses to a demand DFS had served under section 631.154, Florida Statutes (2009). The bank filed a notice of hearing in both cases referencing the notice of claim as the matter to be addressed.
 

 At about the same time as the bank filed its notices of claim, DFS filed an emergency motion pursuant to section 631.154(2), Florida Statutes (2009), in each case. In its emergency motions, DFS alleged that it had demanded that the bank return the money held in the CDs to DFS. Further, DFS alleged that it had requested the bank’s records concerning its relationship with the insurers, their principals, and their affiliates. DFS also alleged that the bank had refused to release the CDs and had claimed that they were encumbered based on their having been pledged as collateral for loans to the insurers’ affiliates and principals. DFS noted that its investigation was “in the preliminary stages,” but it suggested that the bank and the insurers had engaged in misconduct with respect to the pledge agreements. Regarding the loans made directly to FCI, DFS alleged that they were fully collater-alized. In both cases, DFS requested that the court schedule a hearing and then enter an order directing that the CDs be deposited in a public depository only to be released upon further order of the court. Thereafter, DFS filed a cross-notice of hearing, indicating that its motions in both cases would be heard simultaneously with the bank’s notices of claim in both cases.
 

 By the time of the hearing, the bank had filed loan documents concerning all of the loans for which the CDs were allegedly pledged as collateral. At the hearing, however, the court heard only the argument of counsel, and those arguments focused on the validity or enforceability of the pledges. There was no evidence submitted. At the beginning of the hearing, DFS explained its understanding of the purpose of the hearing as follows:
 

 We have asked the Court to take jurisdiction with respect to the certificates pending the resolution of the ultimate issues which concern the validity of the encumbrances, and that would be pending a full period of discovery, expert analysis, and a trial on the merits as is contemplated in Section 631.154, Florida Statutes.
 

 The trial court appeared to agree that such was the purpose of the hearing, as it noted that it was not yet in a position to determine whether there was “any void loan transaction.” DFS argued that there
 
 *833
 
 were factual issues yet to be determined concerning the voidness or voidability of the loan transactions. It also noted that it had not yet received all of the discovery documents it needed to make a full argument. At the conclusion of the hearing, the trial court requested briefing on legal issues pertaining to the pledges, and the parties agreed on a briefing schedule.
 

 In its post-hearing filings, DFS again noted the need for an evidentiary hearing after completion of discovery. Two days before DFS’s reply brief was due, the bank timely provided the documents DFS had requested before the hearing. There were approximately 13,500 pages of documents. Thereafter, without holding an evidentiary hearing, the trial court issued orders finding that FCI and FCT had pledged their CDs as collateral for the loans referenced in the bank’s motions and that all of their loan obligations were in default before DFS was appointed as their receiver.
 
 [2]
 
 The court further found that the bank’s claim to the collateral was superior to that of DFS. As a result of these findings, the court held that the bank was entitled to offset the sums maintained in those CDs against the loan obligations referenced in the bank’s notices. DFS timely appealed.
 

 The dispositive issue in both cases is whether the trial court violated DFS’s right to procedural due process. This issue is governed by the following principles:
 

 [T]he constitutional guarantee of due process requires that each litigant be given a full and fair opportunity to be heard. The right to be heard at an evidentiary hearing includes more than simply being allowed to be present and to speak. Instead, the right to be heard includes the right to introduce evidence at a meaningful time and in a meaningful manner. It also includes the opportunity to cross-examine witnesses and to be heard on questions of law. The violation of a litigant’s due process right to be heard requires reversal.
 

 Vollmer v. Key Dev. Props., Inc.,
 
 966 So.2d 1022, 1027 (Fla. 2d DCA 2007) (internal citations and quotation marks omitted). The right to procedural due process includes the right to “a full hearing before a court having jurisdiction of the matter, the right to introduce evidence at a meaningful time and in a meaningful manner, and judicial findings based upon that evidence.”
 
 Brinkley v. County of Flagler,
 
 769 So.2d 468, 472 (Fla. 5th DCA 2000). General principles of due process prohibit entry of an order affecting the parties’ legal rights before the parties have been given a full opportunity to litigate all factual and legal issues pertaining to those rights.
 
 See Vollmer,
 
 966 So.2d at 1027;
 
 Brinkley,
 
 769 So.2d at 472. Additionally, a trial court may not determine a litigant’s entitlement to an offset where an offset has not been requested.
 
 Epic Metals Corp. v. Samari Lake E. Condo. Ass’n., Inc.,
 
 547 So.2d 198, 199 (Fla. 3d DCA 1989).
 

 In the instant case, DFS invoked the procedure outlined in section 631.154, which provides, in pertinent part, as follows:
 

 (1) If the receiver determines that funds, assets, or property in the possession of another person are rightfully the property of the estate, the receiver shall deliver to such person a written demand for immediate delivery of the funds, assets, or property to the receiver, referencing this section by number, referencing the court and docket number of the receivership action, and notifying the person that any claim of right to the
 
 *834
 
 funds, assets, or property by her or him must be presented to the court within 20 days after the date of the written demand. Any person who holds funds, assets, or other property belonging to an entity placed in receivership under this chapter shall deliver the funds, assets, or other property to the receiver on demand. Should the person allege any right to retain the funds, assets, or other property pursuant to s. 631.155, s. 631.191, s. 631.261, s. 631.262, s. 631.263, or s. 631.281, a pleading setting out the right shall be filed with the court within 20 days after the receipt of the receiver’s demand that the funds, assets, or property be delivered to the receiver....
 

 (2) If requested by the receiver, a hearing shall be held to determine where and under what conditions the property, assets, or funds shall be held by the person pending determination of the dispute ....
 

 (3) If a person has filed a pleading alleging any right to retain funds, assets, or property, the court shall hold a subsequent hearing to determine entitlement to the funds, assets, or property claimed by the receiver.
 

 This statute provides for two hearings, which are to be held at the request of the receiver when entitlement to funds is disputed.
 
 See id.
 
 First, if the receiver so requests, the trial court must hold a preliminary hearing to determine “where and under what conditions the ... funds shall be held” pending the ultimate determination of entitlement to the funds. § 631.154(2). Once the receiver invokes this procedure, the court must hold a “subsequent hearing” to decide the ultimate issue of entitlement. § 631.154(3).
 

 Entitlement to the funds maintained in the CDs was in dispute based on the bank’s claims for enforcement of its rights as a secured creditor in both cases and for offsets in the case concerning FCI. The offset claim was based on section 631.281, which provides, in pertinent part, as follows:
 

 (1) In all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this chapter, such credits and debts shall be set off and the balance only shall be allowed or paid....
 

 As the statute indicates, an offset can be granted only where there is mutuality. § 631.281. Mutuality for the purposes of an offset requires that each party owe the other a debt; it does not require a relationship between the two debts other than the identity of the parties.
 
 See id.; Everglade Cypress Co. v. Tunnicliffe,
 
 107 Fla. 675, 148 So. 192, 193 (1933) (defining “[s]et-off,” as used at common law, as requiring each party to owe the other an ascertained amount under independent contracts). A secured claim, in contrast to a claim for an offset, is based on a contract setting forth one party’s right to the security at issue; it does not require mutual debts.
 
 See
 
 § 631.011(21), Fla. Stat. (2009) (providing that “ ‘[s]ecured claim’ means any claim secured by mortgage, trust deed, pledge, deposit as security, escrow, or otherwise but does not include special deposit claim, a claim against general assets, or a claim based on mere possession”).
 

 Here, the trial court’s findings supported the bank’s claim for enforcement of its rights as a secured creditor, but rather than granting that relief, the court granted offsets. Regardless of which legal basis the trial court found for granting the CDs to the bank, however, both of the orders on appeal are defective because they disposed of DFS’s claim to the CDs before DFS received the full process to which it was entitled.
 

 
 *835
 
 Under section 631.154(B), DFS was entitled to two hearings before the trial court determined the ultimate issue of entitlement to the CDs. DFS invoked this procedure and specifically noted that evidence should be taken to address factual issues concerning the validity or enforceability of the pledges. Further, DFS placed the trial court on notice that it was exploring the factual issues through pending discovery requests and that it desired an evidentiary hearing to test the evidence once it completed discovery. No subsequent events occurred that would eliminate the need for an evidentiary hearing. Despite these circumstances, the trial court determined that the bank was entitled to the CDs based on the pledges and, in doing so, necessarily made findings based on disputed issues of fact, thus violating DFS’s right to due process. To the extent the order in the ease concerning FCI may be interpreted as granting offsets based on loans made directly to FCI, this determination is also premature, as the bank’s entitlement to offsets based on those loans was not developed in the record either legally or factually. Finally, with regard to the case concerning FCT, the trial court erred for the additional reason that it granted offsets where none were requested. This, too, was a violation of DFS’s right to due process.
 

 For the foregoing reasons, we reverse both of the orders on appeal and remand for further proceedings consistent with this opinion.
 

 REVERSED and REMANDED with directions.
 

 HAWKES, C.J., and BENTON, J., concur.
 

 [1]
 

 . The notices of claim were filed by a predecessor-in-interest. However, for the purpose of this opinion, both Branch Banking and Trust Company and its predecessor-in-interest will be referenced as “the bank.”
 

 [2]
 

 . There was no allegation that the bank made any loans directly to FCT.