**UNITED STATES of America,**
**Appellant,**

v.

**PINE HILL APARTMENTS, Inc.,**
**Appellee.**

**No. 17331.**

United States Court of Appeals
Fifth Circuit.

Dec. 16, 1958.

William T. Morton, Asst. U. S. Atty., William C. Calhoun, U. S. Atty., Augusta, Ga., for appellant.

John Bell Towill, Hull, Willingham, Towill & Norman, Augusta, Ga., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellee, Pine Hill Apartments, Inc., which we will refer to as the Company, is a Georgia corporation. It constructed, owned and operated an apartment house project at Augusta, Georgia. The construction was financed through a loan which was secured by mortgage liens upon the real and personal property comprising the apartment project. An assignment of rents was made by the appellee, operative upon a default under the terms of the mortgage or the mortgage note. The loan was insured by the Federal Housing Administration, hereinafter called FHA, under the provisions of the National Housing Act, 12 U.S.C.A. § 1743. The corporate charter of the appellee provided for 100 shares of preferred stock of the par value of one dollar per share. All of the preferred stock was issued to FHA. The charter also provided that the Company would establish and maintain with the mortgagee a Reserve Fund for Replacements by the allocation of $312.59 monthly. By the charter the reserve fund was placed under the control of the mortgagee and disbursements from the fund, "whether for the purpose of effecting replacements of structural elements, furnishings and mechanical equipment of the project or for

any other purpose, may be made only after receiving the consent in writing of the holders of the preferred stock." In the request of the Company and the mortgagee for insurance in accordance with the FHA commitment the mortgagee certified to FHA that it would require monthly deposits to constitute a Reserve Fund for Replacements subject to its control "and from which fund withdrawals may be made only upon the receipt of your [FHA's] written permission; provided that in the event of a default in the terms of the insured Mortgage, such funds of the Mortgagor as may then be in our hands may be so applied to any delinquencies in the terms of payment of the insured Mortgage as may be provided by the terms of said Mortgage or as may be required by the laws of the state having jurisdiction". There was no provision of the mortgage which referred to the Reserve Fund for Replacements.

The mortgage note and the security documents were originally made to The First National Bank of Birmingham. It assigned to Prudential Insurance Company the note, the mortgage and the other security instruments. Payments on the mortgage note were due on the first of each month. The payments due on and after July 1, 1957, were not made. Prudential commenced a strict foreclosure by advertising. The Company made a demand on Prudential that the foreclosure proceedings be terminated and that the indebtedness be brought into a current position by the application of funds from the replacement reserve fund. Prudential withdrew these foreclosure proceedings. Conversations and correspondence ensued, during which the Company proposed to Prudential that a part of the replacement reserve fund, which was then about $25,000, should be expended for new refrigerators, that the mortgage indebtedness be made current by a transfer from the fund and that the balance of the fund be credited upon the mortgage principal. The proposal was rejected by Prudential, and on November 1, 1957, it transferred the mortgage note and assigned the mortgage and other security instruments to the Federal Housing Commissioner. The replacement reserve fund was turned over to FHA. On November 15, 1957, FHA gave the Company notice that there was a default and declared the entire sum due and payable.

On December 8, 1957, the United States instituted, in the United States District Court for the Southern District of Georgia, a suit to foreclose. It stated, in its complaint, that FHA held the mortgage paper for and on its behalf. On January 6, 1958, the court appointed a receiver. On February 24, 1958, A. F. Woolard, M. J. Leary, O. D. Bonner, the holders of all of the Company's outstanding common stock, and Victory Apartments, Inc. filed a petition seeking to intervene in which it was alleged that each of the petitioners held a note of the Company for advances made to it. The aggregate of the notes was $13,000. In the petition it was stated that FHA, at the time the suit was commenced and at the time the petition was filed, had more than enough of the Company's funds in its hands to meet all payments due from the Company on the mortgage indebtedness. It was also alleged that the receiver had funds sufficient to pay the claims of the petitioners. The prayer of the petition was that the receiver pay their claims. The petitioners were permitted to intervene. The Government then, with leave of court, amended its complaint by adding an allegation that the Company was insolvent on and at all times since July 1, 1957. There was a hearing before the court. Considerable testimony was taken as to the value of the property as bearing upon the questions of insolvency and adequacy of the security. Testimony was given as to the advances made by the intervenors and as to the amount in the replacement reserve fund and the amount in the receiver's hands. At the conclusion of the hearing the court announced that it was going to enter an order for the payment of the intervening unsecured creditors but hold the foreclosure in abeyance. The court declined to pass on the question of insolvency at that time. After several times commenting that the

case was one which should be settled, the court announced that it would rule on the intervention but as to the foreclosure the court would "hold it up and see if you all can't get together on it." At this juncture counsel for the Company, who as we have noted was also counsel for the intervenors, announced that "Mr. Woolard says, that in order to conclude the whole thing right now, he is willing for you to enter an order of foreclosure", and that "He will agree to the foreclosure, provided in this order that the money is paid over." The court commented, "Let me work it out like this: You all get your money, get that out of the way, and I will sign an order of foreclosure. You all fix up the proper order." Government counsel announced that an appeal would be taken and the hearing ended. An order was then entered which recited that the intervenors had made advances in good faith which inured to the benefit of the mortgagees and the mortgaged property through enhancing and preserving the value of the property, and ordered the receiver to pay the intervenors the respective amounts of their claims. From the order the Government has appealed.

■■ The initial question, and we think, the decisive question, on this appeal is whether there was a default by the Company in making the payments on the mortgage note. That the installments were not paid by the Company when due is conceded. The failure of the Company to make the payments would be a default unless there was a duty on the part of the holder of the mortgage to apply, from the replacement reserve fund, such amount as might be required to cover the unpaid installments. If such a duty existed it would be because of some agreement of the parties expressed in the documents which related to the fund. These provisions permit but do not require FHA, as holder of the mortgage, to apply the reserve replacement fund to mortgage delinquencies. There is nothing in the mortgage which requires such application nor is there, so far as we can

ascertain, any requirement of the Georgia law that such application be made. Therefore, we conclude, the failure to pay the monthly installments put the mortgage in default, and under its terms, the holder was authorized to declare the entire balance due and payable. The mortgage holder, upon the occurrence of the default, acquired a lien upon the rents, and this lien was not impaired by the appointment of the receiver. On the contrary, the collection of the rents by the receiver protected and preserved the lien upon the net rentals. The receiver was appointed without any determination by the court of the insolvency of the Company. A large discretion is vested in the trial court in the appointment of a receiver in a mortgage foreclosure. In the absence of an abuse of discretion, and unless some principle of substantial equity has been violated, an appellate court will not control the trial court's discretion. Crockett v. Wilson, 184 Ga. 539, 192 S.E. 19; Corbly v. Wright, 186 Ga. 782, 199 S.E. 168; Fountain v. Grant, 210 Ga. 78, 77 S.E.2d 721; 59 C.J.S. Mortgages § 657, p. 1175. An allegation and proof of insolvency is not in all cases necessary for the appointment of a receiver in mortgage foreclosures, May Realty Co. v. Forsdick, 175 Ga. 64, 164 S. E. 761. The Supreme Court of Georgia, in a situation very similar to that presented here, sustained the appointment of a receiver. Stewart v. G. L. Miller & Co., 161 Ga. 919, 132 S.E. 535, 45 A.L.R. 559.

■■ Of the funds in the hands of the receiver, substantially all, it seems, were derived from rents paid subsequent to the default and therefore funds upon which the Government, as the holder of the mortgage, has a lien. No showing was made of any circumstance which would give the intervenors a priority over the mortgage debt. It follows that the court could not properly direct payment to unsecured creditors of funds upon which the Government had a lien. The Government claims that the Company is insolvent. So claiming, and relying upon

31 U.S.C.A. § 191, it asserts that, irrespective of a lien, it is entitled to a priority of payment from the funds in the hands of the receiver. If the insolvency be found the statute creates a priority. If, therefore, the receiver should hold money which is not subject to the lien, and the realization from the property and funds subject to the lien should be insufficient, after foreclosure, to pay fully the costs of foreclosure and the mortgage indebtedness, a determination of whether or not the Company is insolvent will become necessary. If insolvency be shown, the Government will have its priority over the funds which are not subject to the lien. If insolvency is not shown the Government will participate, as to its deficiency, ratably with the intervenors in the distribution of the unencumbered funds of the receivership. The order allowing payment to the intervenors must be set aside. The Government is entitled to proceed with the foreclosure irrespective of the insolvency of the Company. Should a deficiency exist after the application of the funds subject to the Government's lien, including the reserve fund for replacement, and the application of the net proceeds of the foreclosure sale, and the Company is not insolvent, the Government would be entitled to share ratably as to its deficiency with other creditors, including the intervenors, as to unencumbered funds.

The Government states the question on appeal as being whether the district court erred in ordering the receiver to pay the claims of the intervenors. We are convinced that there was error. The intervenors pose two questions, (1) whether or not the mortgage was in default, and (2) whether the Company was insolvent. We have concluded that upon the undisputed facts the mortgage was shown to be in default. The insolvency issue has not yet been reached.

For further proceedings consistent herewith, the order from which the appeal was taken is

Reversed and remanded.