**Leo P. McKEE, as Trustee of the Estate of Seaboard Glass Co., Bankrupt, Appellant,**

**v.**

**Sidney F. HOOD, Roger Sefton, and First National Bank in Fort Lauderdale, Appellees.**

**No. 19548.**

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1963.

---

Paul G. Hyman, Feibelman, Friedman, Hyman & Durant, Miami, Fla., for appellant.

Samuel O. O'Bryan, Jr., Fort Lauderdale, Fla., John H. Gunn, Durand A. Holladay, Richard H. M. Swann, English, McCaughan & O'Bryan, Holladay & Swann, Miami, Fla., for appellees.

Before RIVES, CAMERON and BELL, Circuit Judges.

RIVES, Circuit Judge.

The plaintiff trustee sued the defendant Bank and the defendants Hood and Sefton seeking to recover preferential transfers under Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96. The district court entered summary judgments for the defendants, and the plaintiff appeals.

The following facts were stipulated:

"A. On July 28, 1960, an involuntary petition in bankruptcy was filed against Seaboard Glass Co., and on August 9, 1960 said corporation was duly adjudicated a bankrupt by the United States District Court for the Southern District of Florida, Miami Division.

"B. On September 29, 1960, the Plaintiff was duly appointed Trustee of the estate of said bankrupt and duly qualified.

"C. The Plaintiff has been duly authorized to file this suit.

"D. At all times incident to this law suit, the Defendants, Sidney Hood and Roger Sefton were the

principal officers and stockholders of the bankrupt.

"E. On or about April 6, 1959, the bankrupt, through its duly authorized officers executed and delivered to the Defendant Bank a renewal note in the sum of $10,000.-00, which was indorsed in blank by the Defendants, Hood and Sefton. That said renewal note in the sum of $10,000.00 was one of a series of renewal notes, all of which were indorsed by the Defendants, Hood and Sefton, for the purpose of lending their credit thereto, which were executed and delivered to the Defendant Bank for the purpose of extending a theretofore existing indebtedness of Seaboard Glass Co. to the Defendant Bank.

"F. A copy of a note attached to the Answer of the bank is a true copy of said note and indorsements thereon.

"G. The bankrupt paid to the Defendant Bank the principal sum of $10,000.00 represented by the note above referred to as follows:

"June 30, 1960 . . . . . . . . . $1,000.00
"July 1, 1960 . . . . . . . . . . . . 6,500.00
"July 6, 1960 . . . . . . . . . . . . 1,300.00
"July 8, 1960 . . . . . . . . . . . . 1,300.00

Said payments were by checks drawn by the bankrupt on its checking account with said Defendant Bank. That said July 8, 1960 payment and check was in the amount of $1,475.00 and included the principal balance of $1,300.00 then owing on said note plus accrued interest owing thereon in the amount of $175.00. Upon payment in full on July 8, 1960, the note was marked paid in full by said bank and returned to the bankrupt.

"H. At the time of the payments as aforesaid to the Defendant Bank, the Seaboard Glass Co. was insolvent and all of the Defendants had reasonable cause to believe that the said Seaboard Glass Co. was insolvent.

"I. Said payments were made within four months prior to the filing of the involuntary petition to adjudicate said Seaboard Glass Co. a Bankrupt.

"J. Said payments were made to the Defendant Bank in satisfaction of an antecedent indebtedness then owed by the Seaboard Glass Co. to the Defendant Bank and the effect of said payments was to relieve the Defendants, Hood and Sefton, at that time of their then existing liability as indorsers of said note, and the payment thereof within four months prior to the filing of the petition in bankruptcy against Seaboard Glass Co.

"K. Said payments constituted a payment of a contingent antecedent indebtedness owed by the Defendants Hood and Sefton by the said Seaboard Glass Co.

"L. Defendant Bank is a national banking corporation."

The promissory note from Seaboard Glass Co., endorsed by Hood and Sefton, undertook to give to the bank:

"a lien for the full amount of this note * * * upon the title or interest of any of them, in all property and securities now in or at any time hereafter coming into the custody or possession of the Bank, whether for the express purpose of being used by the Bank as collateral security or for any other purpose, and upon any balance or balances standing to the credit of any accounts maintained with the Bank by any of them. Upon failure to pay this note when due or declared due, the Bank may apply any balance or balances in any account or accounts maintained with the Bank by any of them to the pyament hereof, and the Bank may further foreclose the aforesaid lien upon the aforesaid property and securities without judicial proceedings by selling such property at public or private sale, at such price or prices and upon such

terms and conditions as the Bank in its sole and absolute discretion may determine, without demand, advertisement or notice of any kind, all of which are hereby waived, and apply the proceeds remaining after deducting all costs of sale, in payment or reduction of the amount due hereon, and each of the undersigned and all endorsers, sureties and guarantors hereof, shall remain liable for any deficiency."

■ The Bank relies on this express contract,[1] and on its right of set-off under Section 68 of the Bankruptcy Act, 11 U.S.C.A. § 108. The rule is well settled that a Bank has a right to set-off an obligation owing to it by its depositor against general deposits accepted in good faith and in the regular course of business.[2]

■ In the stipulation as to the facts, it was further provided:

"A second issue of fact might or might not be involved to-wit: whether the Defendant Bank required deposits to be made in the bank account of Seaboard Glass Co. maintained with the Defendant Bank for the special purpose of securing and perfecting a preference."

The depositions of defendants Hood and Sefton went to prove that deposits were not made for the purpose of payment of the note. The affidavit of the Bank's vice president and loan officer showed that Seaboard maintained a long standing, regular deposit account in the Bank, and attached copies of the ledger sheets showing the deposits and withdrawals from April 29, 1960 to August 22, 1960. While it does appear that on three of the four occasions when checks were drawn by Seaboard to the Bank, the checks would not have cleared on the day drawn unless deposits were made on that day, the inference to be drawn from that fact alone is not sufficient to establish that the deposits were made and accepted for the purpose of payment, when all of the other evidence reflects a continuing series of unrestricted deposits and withdrawals made by Seaboard and accepted by the Bank in good faith in the regular course of business.

■■ The plaintiff insists that the Bank did not exercise its right of set-off when it accepted Seaboard's four checks in payment of the note.[3] It was settled, however, in Studley, Trustee v. Boylston Bank, 1913, 229 U.S. 523, 528, 529, 33 S.Ct. 806, 808, 809, 57 L.Ed. 1313, that, " * * * there is nothing in § 68a which prevents the parties from voluntarily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted." Our Circuit and most of the other Circuits are committed to the view that a bank's right of set-off may be exercised through the form of accepting checks in payment of the obligation.[4]

■ The defendants Hood and Sefton, as endorsers of the note, are creditors

1. See Everglade Cypress Co. v. Tunnicliffe, 1933, 107 Fla. 675, 148 So. 192, 193.

2. Continental Trust Co. v. Chicago Title & Trust Co., 1913, 229 U.S. 435, 33 S.Ct. 829, 57 L.Ed. 1268; Studley, Trustee v. Boylston Bank, 1913, 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313; Jandrew v. Guaranty State Bank, 5 Cir., 1923, 294 F. 530; Kane v. First National Bank of El Paso, 5 Cir., 1932, 56 F.2d 534; Ribaudo v. Citizens National Bank of Orlando, 5 Cir., 1958, 261 F.2d 929; Mayo v. Pioneer Bank & Trust Co., 5 Cir., 1959, 270 F.2d 823; Florida Trailer and Equipment Co. v. Deal, 5 Cir., 1960, 284 F. 2d 567; Mayo v. Pioneer Bank & Trust Co., 5 Cir., 1961, 297 F.2d 392; Annotation, 85 A.L.R. 869; 4 Collier on Bankruptcy (14th ed.), Secs. 68.15, et seq.

3. Citing Traders Bank v. Campbell, 1871, 14 Wall. (81 U.S.) 87, 20 L.Ed. 832; Ridge Ave. Bank v. Studheim, 3 Cir., 1906, 145 F. 798; and In re Starkweather & Albert, W.D.Mo., 1913, 206 F. 797.

4. Jandrew v. Guaranty State Bank, 5 Cir., 1923, 294 F. 530; cases collected in Annotation, 85 A.L.R. 384, n. 36; 4 Collier on Bankruptcy 14th ed., Sec. 68.18; 3 Remington on Bankruptcy, Sec. 1474.5, p. 473; 8A C.J.S. Bankruptcy § 216(6), p. 51.

within the meaning of the Bankruptcy Act, and the four checks going to pay the note, if considered transfers of property by the debtor for their benefit, would constitute a voidable preference.[5] In substance, however, the checks were merely the form by which the Bank exercised its right of set-off and no preferential "transfer" took place.[6]

The district court did not err in rendering the summary judgments for the defendants, and the judgments are

Affirmed.

5. Sec. 60 sub. b of Bankruptcy Act, 11 U. S.C.A. § 96; 4 Collier on Bankruptcy, 14th ed., § 60.17.

6. Joseph F. Hughes & Co. v. Machen, 4 Cir., 1947, 164 F.2d 983; Citizens National Bank of Gastonia v. Lineberger, 4 Cir., 1930, 45 F.2d 522; Walker v. Wilkinson, 5 Cir., 1924, 296 F. 850; 4 Remington on Bankruptcy, p. 260.