UNITED STATES of America, Plaintiff,

v.

A. C. BULLS, Sr., Individually, and as a Stockholder, Director, Officer, and Agent in Simmons Gardens, Inc., a Corporation, et al., Defendants.

Civ. A. No. 622–E.

United States District Court
M. D. Alabama, E. D.
Aug. 21, 1964.

Ben Hardeman, U. S. Atty., and Rodney R. Steele, Asst. U. S. Atty., Montgomery, Ala., for plaintiff.

Fred D. Gray and Clifford J. Durr, Montgomery, Ala., for defendants.

JOHNSON, District Judge.

This action, instituted by the United States of America, seeks to recover of the defendants the sum of $45,231.49 upon the general theory that a deficiency judgment was rendered in Civil Action No. 581–E, styled United States of America v. Simmons Gardens, Inc., by this Court on August 22, 1962, in favor of the United States and against Simmons Gardens, Inc., in the amount sued for in this case on an indebtedness which resulted from a foreclosure and sale by the Federal Housing Administration on property that secured an indebtedness from the corporation. The United States says that the corporation defaulted in its mortgage payments on November 1, 1960, and that the default continued until the foreclosure in December, 1961. The case is now submitted to this Court upon the issues as made up by the pleadings and proof. Upon this submission this Court now, in this memorandum opinion, makes the appropriate findings of fact and conclusions of law.

The United States asks this Court to (1) impose a trust or equitable lien on the assets of each defendant, (2) require an accounting of each of the defendants relating to the assets and liabilities, and (3) declare each of the defendants indebted to the United States in the sum of $45,231.49, plus interest. Specifically the theories plaintiff proceeds upon are:

(1) That the defendants, A. C. Bulls, Sr., A. C. Bulls, Jr., Ethel S. Bulls, George S. Bulls, A. C. Bulls and Sons, and Bulls Realty Company, individually and in their fiduciary capacities, failed to pay the debt owed to the United States as required by Title 31, Sections 191 and 192, United States Code Annotated, when Simmons Gardens, Inc., was insolvent and after default by said corporation on its mortgage obligation to the United States. In this connection the United States says that it was and is entitled to a priority of payment out of the assets of Simmons Gardens, Inc., during the entire time that said corporation was insolvent and in default on its mortgage obligation. The United States says in connection with this theory that after insolvency and default, the defendants removed and transferred certain assets of Simmons Gardens, Inc., which should have rightfully been available to pay the mortgage indebtedness due the Federal Housing Administration.

(2) That it is entitled to recover as a preferred stockholder in Simmons Gardens, Inc., and claims in this connection that the defendants in transferring said assets of Simmons Gardens—thereby making said assets unavailable to discharge the mortgage obligation due the United States—

breached their fiduciary obligation as directors and officers of the corporation.

(3) That it is entitled to recover in this case in that the defendants preferred general creditors by transferring assets of Simmons Gardens, Inc., to said general creditors, the effect of said transfers being preferring these general creditors over the claim of the United States, and that said action was for the purpose of hindering and delaying and defrauding the United States in its claim.

(4) That it is entitled to recover in this case by reason of the fact that the defendants illegally commingled the assets of Simmons Gardens, Inc., with the assets of other corporations and with their individual assets; that said commingling has made it impossible for the United States to ascertain and follow the assets of Simmons Gardens, Inc.; that said commingling of funds which the defendant held in trust for Simmons Gardens, Inc., requires that the individual and corporate funds of the defendants of which said trust funds were commingled, be impressed with the trust in favor of the United States to the extent of the unpaid mortgage indebtedness due the United States.

Each of the defendants acknowledges that Simmons Gardens, Inc., held the title to a Federal Housing Administration guaranteed mortgage rental housing project in Macon County, Alabama, until June, 1962; that the corporation defaulted in its obligation under the mortgage sometime prior to December, 1961, when foreclosure proceedings were instituted. To each of the other claims and contentions as made by the United States in this case, each of the defendants, separately and severally, pleads the general issue. In this connection, it was specifically understood, as reflected by the pretrial order made and entered in this case on November 9, 1963, that this general issue plea included but was not necessarily restricted to the contentions that neither of the defendants made any priority payments out of the funds of Simmons Gardens, Inc., during the time that that corporation was insolvent and in default on its mortgage payments to the Federal Housing Administration. The defendants further deny that they breached any fiduciary obligation they owed as directors, officers, stockholders or agents of Simmons Gardens, Inc., and that they dissipated and wasted any of the assets of that corporation. The defendants further specifically deny that they transferred or permitted the transfer of any of the assets of Simmons Gardens, Inc., the effect of which was to prefer creditors over the claim of the United States, or to hinder or delay or defraud the United States in the collection of its claim; and the defendants further deny that they directly or indirectly, jointly or separately, commingled any of the funds of the Simmons Gardens corporation with the funds of any other corporation or with any of their individual funds.

Simmons Gardens, Inc., is a corporation organized under the laws of the State of Alabama with its principal place of business at Tuskegee Institute, Alabama. Its common stockholders are, and were at all times pertinent to this case, A. C. Bulls, Sr., A. C. Bulls, Jr., Ethel S. Bulls and George S. Bulls. The directors are, and were at all times pertinent to this case, A. C. Bulls, Sr., A. C. Bulls, Jr., Ethel S. Bulls and George S. Bulls; these same individuals were the officers and agents of the corporation Simmons Gardens, Inc. The business of the corporation was to operate a one and two story garden-type housing project consisting of 60 rental units. A. C. Bulls, Sr., held all but three shares of the common stock, with E. S. Bulls, A. C. Bulls, Jr., and George S. Bulls each holding one share. The project was insured by the Federal Housing Administration under Section 608, Title VI of the National Housing Act (Title 12 U.S.C.A. § 1743), and, according to the Articles of Incorporation, the Federal Housing Administration held 100 shares of preferred stock in the corporation. On or about October 15, 1949, the defendant corporation executed its

mortgage and note to a Federal Housing Administration "approved lender" in the sum of $324,200. This indebtedness was increased to $345,800 by subsequent agreement between the Simmons Gardens, Inc., and the "approved lender," with the approval of the Federal Housing Administration. The note provided for payments of monthly installments of principal, plus interest at the rate of 4% per annum and, as is usual in such cases, further provided that in the event any installment was unpaid on the date due of the next maturing installment, the entire indebtedness was to become due and payable at once, without notice, at the option of the holder of the note. To secure the payment of the note, Simmons Gardens, Inc., executed a mortgage in favor of the "approved lender" with the housing project, including the real estate and certain personal fixtures, described as security in the mortgage. As stated above, the loan represented by the note and mortgage was insured by the Federal Housing Commissioner on May 25, 1950, pursuant to the provisions of Section 608, Title VI of the National Housing Act, as amended (Title 12 U.S.C.A. § 1743), and the administrative rules issued thereunder. In December, 1961, the United States filed foreclosure proceedings in this Court; a receiver was appointed to take charge of and collect and conserve the assets of the corporation Simmons Gardens, Inc.; a summary judgment was entered on March 8, 1962, in plaintiff's favor, and this Court ordered the receiver to sell the property that was described in the mortgage for the purpose of securing the payment of the note. At the time of the foreclosure there was due and unpaid from Simmons Gardens, Inc., on its note the sum of approximately $282,756. After advertisement, the property was sold to the highest and best bidder; the sale was to the Federal Housing Administration for the sum of $225,000, this being a bid of mortgage indebtedness. This sale was subsequently confirmed, and the receivership was closed. In the same proceeding and on June 10, 1962,

the United States petitioned this Court for a deficiency judgment. After notice and proper service, and without opposition on the part of Simmons Gardens, Inc., this Court on August 22, 1962, rendered a deficiency judgment in favor of the United States of America against Simmons Gardens, Inc., in the amount of $45,231.49.

At the conclusion of the testimony submitted by the parties in support of their contentions in this case and upon preliminary consideration of that testimony and proof, this Court was of the opinion that a complete accounting should be ordered of the financial transactions of Simmons Gardens, Inc., Bulls Realty Company and the individual defendants. This Court accordingly appointed a special master, pursuant to Rule 53, Federal Rules of Civil Procedure, for the purpose of making that audit and examination. The special master's report was completed and filed with this Court on June 11, 1964. This Court now specifically approves and adopts the findings of fact of the special master as they are reflected in this report; none of the master's conclusions or opinions are adopted.

Bulls Realty Company is, and was at all times pertinent to this case, a corporation organized under the laws of Alabama, with its principal place of business at Tuskegee Institute, Alabama. Its stockholders are, and were at all times material to this case, A. C. Bulls, Sr., A. C. Bulls, Jr., and George S. Bulls. The directors are and were A. C. Bulls, Sr., A. C. Bulls, Jr., Ethel S. Bulls and George S. Bulls. The officers and agents are A. C. Bulls, Sr., A. C. Bulls, Jr., Ethel S. Bulls and George S. Bulls. The ABC Supermarket is also a corporation owned and operated by the Bulls family in the Tuskegee, Alabama, area. A. C. Bulls and Sons was, and possibly still is, an unincorporated "operating company"; this company owned no property and had no assets.

At no time during its active operation did Simmons Gardens, Inc., maintain a separate bank account of its own. The only records of the assets and liabilities

reflecting the receipts and disbursements and of the profits and losses of Simmons Gardens, Inc., were kept on the books of Bulls Realty Company, which was the rental broker for Simmons Gardens, Inc. All of the monies of Simmons Gardens, Inc., were kept by Bulls Realty Company in a bank account or bank accounts in the name of Bulls Realty Company or A. C. Bulls and Sons. During this same period ABC Supermarket did not maintain a separate bank account in its own name. The monies of this supermarket were kept in the same bank accounts with monies of Simmons Gardens, Inc., in the name of A. C. Bulls and Sons. A. C. Bulls and Sons did not maintain separate, or any, books of account of its own. It did maintain a bank account in its name into which it deposited monies of Simmons Gardens, Inc., ABC Supermarket, and Bulls Realty Company; the disbursements of monies belonging to Simmons Gardens, Inc., and the other corporations and companies just mentioned, were through these accounts maintained in the name of A. C. Bulls and Sons. Bulls Realty Company maintained a bank account or accounts and also maintained books and records. Monies belonging to Simmons Gardens, Inc., were deposited from time to time into the Bulls Realty account.

The cash "throw-off" of Simmons Gardens, Inc., representing funds available after the payment of debt service and project expenses from September 1, 1951, to December 18, 1961, amounted to $35,-373. On December 18, 1961 (five days after the foreclosure proceeding was filed in this Court) a journal entry on the books of Simmons Gardens, Inc., reflects that the sum of $37,217.75 was transferred from Simmons Gardens, Inc., to Bulls Realty Company, Inc. There was not this much money to transfer, but the amount of $35,373 was actually transferred to Bulls' personal and corporate interest other than Simmons Gardens, Inc., as follows: (a) by periodic transfers to various stockholders as "notes receivable," a total amount of $26,428, and (b) by cancellation of "notes receiv-

able" and application of an accumulated management and maintenance fee of 13% of rentals for the entire period of Bulls' ownership, as a credit to Bulls Realty Company, Inc., for services. As noted above, these cash funds so transferred were already in possession of Bulls Realty Company, Inc., and this Court specifically finds that the funds were not used for purposes related to or for the benefit of Simmons Gardens, Inc. A final specific disposition of the monies could not be traced. The monies of Simmons Gardens, Inc., were without any doubt, commingled with all other funds of the Bulls enterprises and disappeared as an entity. The effect of the transactions actually transferring the sum of $35,373 on the inability of Simmons Gardens, Inc., to satisfy any portion of the mortgage indebtedness, including the deficiency judgment that was rendered in this case, is obvious.

From the evidence submitted in this case, it is undisputed that Simmons Gardens, Inc., was insolvent throughout its corporate life. This insolvency is reflected as early as 1952 and 1953 by correspondence for the servicing agent threatening foreclosure. There was a continual delinquency in monthly debt service payments during the entire period of Bulls' ownership. As a matter of fact, the corporation paid late-payment charges during substantially the entire time. There is no question that there was a fantastic laxness on the part of the Federal Housing Administration in the original financing of this Title 608 project. The evidence reflects the use of cheap materials and fixtures, resulting in excessive costs for maintenance and replacements and probably overevaluations to justify loans grossly disproportionate to the fair value of the mortgaged property. In addition there was no reasonable estimate of this corporation's earning capacity. In addition to this, the Bulls family did not contribute any working capital to Simmons Gardens, Inc. From the start, there were insufficient corporate earnings to meet the required debt service, project expenses and man-

agement fee costs. For instance, 100% occupancy of this project would have produced an annual return of 9.8% of fixed debt. The occupancy actually averaged 86% of gross rentals during the period, producing a gross annual return of 8.47 of the fixed debt. The annual debt service amounted to 84% of the average annual gross revenue.

The details of the "loans to stockholders" claimed by the defendants is obscure, to say the least. These "loans" totalling $26,428 were entered as adjustments at fiscal year-ends. No evidence was available to either prove or justify any such loans. What actually happened in this case in this connection is that the books of the Simmons Gardens, Inc., reflected that the corporation had over $35,000 in cash; there was no cash there, in that it had been previously withdrawn and diverted to and for the benefit of the individual defendants and/or the Bulls Realty Company and/or the A. C. Bulls and Sons. To "explain" the absence of this cash, the "loans" were set up purporting to reflect indebtedness from the individuals to Simmons Gardens, Inc. When foreclosure time came, an entry was made attempting to take an exorbitant management fee that had supposedly been accumulating—this fee—as "taken" —representing 13% of the rentals for the entire period of Bulls' ownership. The effect of this transaction was to cancel the fictitious "loans" from the individual defendants to Simmons Gardens, Inc., and also to "explain" the absence of the cash. The failure of the stockholders and/or Bulls Realty Company to repay the "loans" advanced by Simmons Gardens, Inc., and the book entry reflecting the "payment" to Bulls Realty Company, Inc., of the management and maintenance fee did not result in Simmons Gardens, Inc., becoming insolvent. The corporation was insolvent long prior to these transactions. The failure to repay these loans—if there were any such loans—and the transaction attempting to take the accumulated management maintenance fee, merely aggravated the insolvency.

■■ This Court now concludes that the United States is entitled to a judgment in this case in the amount of $35,-373 against A. C. Bulls, Sr., Ethel S. Bulls, George S. Bulls, A. C. Bulls, Jr., A. C. Bulls and Sons and Bulls Realty Company, a corporation. The evidence in this case is clear that these defendants individually and in their fiduciary capacities failed to pay the debt owed to the United States as required by Title 31, United States Code Annotated, Sections 191 and 192, at a time when Simmons Gardens, Inc., was insolvent and after default on the mortgage of that corporation to the United States of America. The United States was and is entitled to a priority of payment out of the funds of Simmons Gardens, Inc. This priority existed throughout the time of insolvency. The removal and misappropriation of the money belonging to Simmons Gardens corporation was by the defendants as general and unsecured creditors and for the benefit of general and unsecured creditors. This cannot be done. In this connection see United States v. Pine Hill Apartments (5th Cir. 1958), 261 F.2d 667; United States v. Lutz (5th Cir. 1961), 295 F.2d 736; and United States v. Ivy Hall Apartments, Inc. (3rd Cir. 1962), 310 F.2d 5.

■ The liability against these defendants in favor of the United States is also found in the theory that the funds of Simmons Gardens, Inc., were commingled with assets and funds of all the other corporations and companies and individuals named as defendants in this case, which commingling has made exact ascertainment of the amounts belonging to Simmons Gardens, Inc., impossible. In this connection see Hanover Nat. Bank v. Thomas, 217 Ala. 494, 117 So. 42; Farish v. Holley, 244 Ala. 19, 12 So.2d 88; Bell v. Killian, 266 Ala. 12, 93 So.2d 769; Hutchinson v. National Bank of Commerce, 145 Ala. 196, 41 So. 143; and Robinson v. Williams, 229 Ala. 692, 159 So. 239.

This Court does not consider it necessary or appropriate to discuss any of

the other theories the plaintiff proceeds upon in this case. The judgment to be rendered against the defendants in this case in the amount of $35,373 is to be, when collected, applied on the deficiency judgment that was entered by this Court in Civil Action No. 581–E on August 22, 1962, in favor of the United States of America and against Simmons Gardens, Inc., in the amount of $45,231.49.

With the exception of the cost incident to the examination and report of the special master, this cost being in the amount of $1,323, the costs in this case will be taxed against the defendants. As to the cost incident to the examination and report of the special master in the amount of $1,323, that amount will be taxed against the United States of America.