**A. C. BULLS, Sr., et al., Appellants,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 22109.**

United States Court of Appeals
Fifth Circuit.

Feb. 8, 1966.

Fred D. Gray, Clifford J. Durr, Montgomery, Ala., Gray & Seay, Montgomery, Ala., for appellants.

Ben Hardeman, U. S. Atty., Rodney T. Steele, Asst. U. S. Atty., Montgomery, Ala., for appellee.

Before TUTTLE, Chief Judge, and RIVES and GEWIN, Circuit Judges.

TUTTLE, Chief Judge:

This is an appeal from a judgment entered by the trial court without a jury against the directors of an FHA Housing Project corporation to be applied upon a deficiency judgment which resulted from a foreclosure of the FHA mortgage.

The basic, undisputed, facts are as follows: Simmons Gardens, Inc., an Alabama corporation whose sole asset was title to a Section 608 (Title VI of National Housing Act), housing project located in Tuskeegee, Alabama, consisting of 60 rental units, was incorporated in 1949. As is required, the United States held preferred stock. The common stock was all owned by Mack D. Saxon, who caused the building to be built and who continued to own the stock until 1952. In 1949, the corporation executed its note in the amount of $345,800.00 and mortgage to an FHA approved lender. The note provided for monthly payments of principal, plus interest at 4% per annum, and provided for acceleration in case of default on payment of any installment at the holders' option.

In 1952, members of the Bulls family, appellants here, purchased all the common stock from Saxon, A. C. Bulls, Sr., A. C. Bulls, Jr., and George S. Bulls and Ethel S. Bulls, the wife of A. C. Bulls, Sr., were all stockholders and directors. They also owned all of the stock in Bulls Realty Company, a corporation. The apartment houses consisted of 10 two-story units containing 6 apartments each. If fully occupied at the rental rate approved by the FHA, the annual gross income from the properties would have been $33,855.00. Occupancy from the date of the Bulls acquisition of the stock down to the date of foreclosure averaged only 86% and produced gross income of an average of only $29,077.00 per year.

At the annual stockholders and directors meeting of the corporation, held in September, 1952, a resolution was adopted providing:

"That the directors and officers are authorized to pay Bulls Realty Company, Inc. for management and special maintenance service 10% and 3% respectively of the monthly net rental and miscellaneous income retroactive to October 1, 1951, and continuing in a like sum each month

thereafter until such agreement is changed. The president and secretary are hereby authorized to execute a note or notes or pay money to Bulls Realty Company, Inc. at any time they deem it necessary for said services rendered or to be rendered upon the terms set out above."

At the same meeting the following further resolution was adopted:

"That the directors and officers of the corporation are hereby authorized at any time they deem it necessary to make loans to Bulls Realty Company, Inc. and/or stockholders, and the said Bulls Realty Company, Inc. and/or stockholders are to execute a promissory note and/or notes bearing no interest and payable on such date as agreeable with the parties involved."

During the entire period of time at issue here, Bulls Realty Company, by its stockholders, the male members of the Bulls family, collected the rents, kept books, found tenants and performed all of the usual corporate functions necessary to keep the project operating. Simmons Gardens, Inc. paid no salaries. For the special maintenance fee the realty company, principally through the activities of A. C. Bulls, Jr., supervised all of the maintenance of the buildings, including doing many jobs of repair and maintenance himself. This included servicing complicated wall heaters, installation of sink tops, asphalt tile flooring, some roofing, repairing leaks and rescreening windows and doors, as well as answering calls to "satisfy the tenant."

Simmons Gardens, Inc. kept no bank account of its own. All of the rents collected by Bulls Realty Company, Inc., under the management contract, were deposited by it in its bank accounts. However, all of the amounts collected by way of rents were truly and accurately reflected on the books of the Simmons Gardens, Inc., although the books were not kept in accordance with the standards prescribed by FHA regulations. On these books of account each year's total receipts, averaging some $29,000.00 were accounted for by listed expenditures, none of which are challenged by the government as being improper, except for the item next mentioned.

During several of the years, the books of the corporation show that stockholders had borrowed money from the corporation. These loans were set up on the books as "notes receivable." In the explanation attached to annual statements it shows that these are loans made to stockholders. However, oral testimony was to the effect that the notes were notes of Bulls Realty Company, Inc. These loans are shown to have occurred as follows: 9/30/53, $5,000.00; 9/30/54, $4,000.00; 9/30/55, $6,000.00; 9/30/56, $1,200.00; 12/31/56, $600.00; totalling 16,800.00. Then on 12/31/57, there was a repayment of $4,800.00, reducing the balance of notes receivable to $12,000.00. Then new loans were made on 12/31/58 of $428.00; on 12/31/60, $2,500.00; and on 9/30/61, $11,500.00; showing a net balance on the books as at the date the foreclosure suit was filed of $26,428.00.

At all times when these loans were being made to the directors, the Bulls were entitled to have received by each respective date an amount on account of the commission due them in excess of the balance of the outstanding loans. Thus, without any obligation to repay the company, the Bullses could have received a larger amount that that entered on the books as notes receivable without any obligation of repayment.

At no time during the operation of the company under the Bulls's ownership was there ever enough cash on hand after making all current debt service payments to discharge in full the claim that the Bullses had by reason of the outstanding commission and maintenance charge.

The books for Simmons Gardens, Inc. were kept by George Bulls, an employee of Bulls Realty Company, Inc., who testified that he was not an accountant but that he studied accounting in high school and one course in college. He stated that he did not accrue the commission and maintenance fees on the books of either Simmons or Bulls, because he knew the

money would not be there to pay the amount accrued and this would create an income tax liability to Bulls Realty with no actual income in cash to pay it with.

Monthly rental installments during the period of operations occasionally fell in arrears. However, the owner of the mortgage, New England Mutual Life Insurance Company, did not give up until after a failure of payment of the installment due on November 1, 1960. Thereafter, on February 14, 1961, the mortgage was reassigned to the Federal Housing Administrator, and on December 13, 1961, the United States filed foreclosure proceedings. In the meantime, however, the record discloses that there was an effort made by the FHA to arrange a "work out agreement" with the Bullses, and such an agreement was signed as of March 15, 1962, which provided for the payment of all arrearages up to date, and certain other requirements. Although it appeared that some $6,000.00 was paid during 1962 on account of interest, and some payments were made on principal, it is evident that the "work out agreement" was not carried out. The record is silent as to the date on which the FHA exercised its option to declare the full amount of the debt due. In the foreclosure suit, it is alleged, "Said note and the mortgage * * * are still in default and they are still owned by the Federal Housing Commissioner who declares the entire outstanding balance of both principal and interest due and payable. * * * "

A receiver was appointed by the District Court on December 13, 1961. He took possession on December 18th. On December 18th the books of Simmons Gardens, Inc. were closed out by closing entries for the year normally ending on December 31st. As one of the closing entries a journal entry was made, charging an accumulated Management and Maintenance account of $37,217.75, and crediting the Notes Receivable account in the amount of $26,428.00, and crediting cash of $7,251.00. It is apparent that these book entries were intended to set off the claim owned by the Bullses against the corporation on account of the management and maintenance agreement through the year 1961 for the notes which they then owed the company, totalling $26,428.00, plus the balance of cash which they had on hand, which was, therefore, charged to them in the sum of $7,251.00. The Bullses claim a net balance thus owing to them of approximately $3,500.00 for which there was not sufficient cash to pay.

The foreclosure suit was followed by a sale at which the United States purchased the property for less than the face of the mortgage and a deficiency judgment was entered against Simmons Gardens, Inc., for $45,231.49. The United States now sues the appellants as former directors and officers and their management company for recovery of the full deficiency.

The case of the United States is based principally on Title 31, U.S. Code Ann., Sections 191 and 192.[1]

---

1. These sections provide as follows:
   Section 191: *"Priority Established.* Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."
   Section 192: *"Liability of fiduciaries.* Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

The Government also contended that the appellants were liable for the full amount of the deficiency because "Appellants individually and in their fiduciary capacity commingled the funds of Simmons Gardens, Inc., with assets and funds of Appellants, which commingling has made ascertainment of the amounts belonging to Simmons Gardens, Inc., impossible and calls for equitable relief."

Finally, the United States claims that the District Court "Could have found liability on two other theories advanced by Appellee: (a) The derivative claim of the United States as a preferred stockholder for the wasting of assets; (b) The fraudulent preference of credit under Alabama law".

The trial court appointed an auditor to examine the books and records of the company and to make his report. The statement of the case above substantially follows the findings of the auditor, which included as an additional finding that, in point of fact, the corporation was insolvent at all times covered by the inquiry in that its total assets at no time equalled its total liabilities. The auditor attributed the deficiency, at foreclosure sale, at least partially, to the act of the FHA in approving too large a loan to the original builder and in permitting the construction to be of inferior quality. He also criticized the FHA for inadequate supervision of rental collections and management.

The trial court approved the findings of fact of the auditor, but did not accept any of the auditor's conclusions. However, the court also severely criticized the practices of the FHA. The court said, "The evidence in this case is clear that these defendants individually and in their fiduciary capacities, failed to pay the debt owed to the United States as required by Title 31, U.S.Code Ann., Sections 191 and 192 at a time when Simmons Gardens, Inc., was insolvent, and after default on the mortgage of that corporation to the United States of America. The United States was and is entitled to a priority of payment out of the funds of Simmons Gardens, Inc. This priority existed throughout the time of insolvency. The removal and misappropriation of the money belonging to Simmons Gardens Corporation was by the defendants as general and unsecured creditors and for the benefit of general and unsecured creditors. This cannot be done. In this connection, see United States v. Pine Hill Apartments, 5 Cir., 1958, 261 F.2d 667; United States v. Lutz, 5 Cir., 1961, 295 F.2d 736; and United States v. Ivy Hall Apartments, Inc., 3rd Cir., 1962, 310 F.2d 5."

The trial court entered judgment against appellants for $35,373.00, which represents the entire *net* amount received by Simmons Gardens, Inc., during the entire ten year period, after payment of debt service and other project expenses. It thus disallowed completely any management and maintenance fees to Bulls Realty Company.

■ The first weakness of the Government's case, and thus the error in the application of the law to the facts by the trial court, is that there was no "debt due to the United States" on this mortgage executed in favor of W. B. Leedy & Company, Inc., and transferred to the New England Mutual Life Insurance Company, until February 14, 1961, at which time the United States for the first time, through the Federal Housing Commissioner, acquired title to the mortgage. See United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222 and In re Miller, 2d Cir., 1939, 105 F.2d 926.

■ The second flaw in the Government's case is that there was no "payment" of a "debt" to any other person prior to the United States even after it acquired the mortgage. It must be borne in mind that the book entry on December 18, 1961, did not have the effect of transferring any cash from Simmons Gardens, Inc., to the appellants. This entry was merely a recognition by Simmons of Bulls' right of set off. The situation, at the time the receiver took possession of the books and other assets of Simmons Gardens, is that Bulls Realty Company was indebted to Simmons for all monies

collected from the tenants of the apartments which had not been accounted for as having been expended for the benefit of Simmons Gardens. Thus, as the trial court found, there remained the sum of $35,373.00 to be accounted for. This amount had been collected by the management agents and had been retained by them. The agents had given Simmons notes for $26,428.00 of this sum. The balance was shown on the books as cash. They were thus in much the same position as a bank which held deposits of Simmons but which had a claim of a larger amount.

Finding themselves in the position of bankers for Simmons Gardens, Inc., and holding $35,373.00, belonging to Simmons Gardens, it would normally be entirely proper for them to set off their claimed $37,217.75 for management and maintenance services over the years against their obligation to pay Simmons the amount of their notes plus the balance of cash on hand. The issue here is whether the federal statute prevents the application of this general right of set off.

■ The record before us does not permit any conclusion other than that there was a true claim by Simmons against Bulls Realty Company on notes executed by the latter. In fact, there was a true claim by Simmons for the full amount of $35,373.00 without reference to any notes. Moreover, the record does not permit any conclusion other than that on the date that the United States acquired title to the mortgage and until foreclosure, Bulls Realty Company had performed substantial services in the management and maintenance duties about the apartments owned by the Simmons Gardens, Inc. The FHA recognized the right of Simmons Gardens, Inc., as a mortgagor, to make such management and maintenance contracts, and common sense supports this attitude. Simmons Gardens, Inc., paid no salaries to anyone for performing the duties of renting and managing the apartment properties. Instead of paying salaries to its own officers, it made a contract with Bulls Realty

Company, a real estate corporation, to act as its agent in performing the duties of managing the apartment properties. The record discloses correspondence with the FHA in which it is stated that while the 10% management and 3% maintenance fees were considered high, they were not challenged by the FHA. There is no evidence in the record that would warrant a determination that the contract was not fair under the circumstances of this operation. While the trial court, in passing, spoke of them as "exorbitant," it made no finding that they were to be disallowed. The auditor found them to be reasonable under the circumstances. These fees totaled $37,217.75.

Thus it is, that on the date that the receiver took charge, Bulls Realty Company had a claim substantially in excess of the amount of its indebtedness to Simmons Gardens, Inc. Even under the Bankruptcy Act, it is recognized that a debtor of a bankrupt is entitled to set off his claim against the bankrupt against the latter's claim against him. See 11 U.S. C.A. § 108, and see McKee v. Hood, 5 Cir., 312 F.2d 394. The case of United States v. Pine Hill Apartments, 5 Cir., 1958, 261 F.2d 667, has no application here. In that case, the stockholders intervened in a foreclosure suit seeking to establish a claim for payment of notes representing money they had advanced to the corporation. They did not hold assets of the company which could be used by them as a set off, as is the case here.

As has been indicated above, the United States acquired title to the mortgage on February 13, 1961. Thereafter, the FHA and Simmons Gardens, Inc., entered into a contract, under which Simmons Gardens undertook to make specific payments to FHA including all of the income received from the apartments if the FHA withheld foreclosure. A substantial sum was paid out of the rents received during the period following the actual default of December 1, 1960, but there was a failure on the part of Simmons Gardens to carry out the terms of this "work-out agreement".

The FHA permitted Simmons Gardens, Inc., to remain in possession and collect the rents. It permitted rents to be collected by a large creditor, Bulls Realty Company, until foreclosure. Until such foreclosure, it had no actual lien on the rents, because Simmons Gardens had not received the cash from its own debtor. It would have been possible for the FHA to have obtained a receiver in February, 1961. It did not do so until December, by which time $20,000.00 additional rents had been collected by Bulls. As indicated, part of this was actually paid over to the FHA under the "work-out agreement" but part was retained by Bulls Realty Company, which claimed the right to hold it on a set off on Bulls claim against Simmons in a larger amount. We know of no rule of law that denies to Bulls Realty Company the right to set off this outstanding claim on Simmons Gardens against their obligation to account for the $35,373.00 they owed Simmons.

We do not approve of the failure of Simmons Gardens and appellants to keep their books of account as accurately as was possible, nor do we approve of the desire by the bookkeeper to take a short cut in accounting to eliminate what might be taxable income merely because there would not be actual cash income to back it up. It is not at all clear that the same tax result would not have been achieved if the bookkeeper for Simmons Gardens had entered the management and maintenance fees as an accrued liability of Simmons Gardens to Bulls Realty Company and the books of Bulls Realty Company had shown income of an equal amount. It would then have been possible for the realty company to have written this account off as a bad debt to the extent that Simmons Gardens did not have cash or other property to respond to the obligation. No one is able to say on this record whether Simmons, Bulls Realty Company or the individual appellants gained or lost in the long run in their income tax obligations to the United States by the method in which the accounts were handled. In any event, it is plain that, so far as accounting knowledge and skill are reasonably available to business people, it is not only desirable, but legally required of them that, they reflect accurately as possible on their books the true facts relating to income.

We do not find any error in the admission of evidence by the trial court. The record in the foreclosure proceedings was admissible against these appellants because it was admitted for the purpose of establishing a deficiency judgment against Simmons Gardens, Inc., which, in turn, would have a claim against the officers and directors for any of its funds not properly accounted for by them.

The Government's contention with respect to the commingling of assets is not valid as a separate claim for judgment. While the books of Simmons Gardens, Inc., kept by Bulls Realty Company, were not kept in accordance with standards established by the FHA, the auditor's report found them to be accurate so far as they showed what disposition had been made of the rents received from the rental properties. The auditor charged Bulls Realty Company with all items not accounted for. This, of course, was proper, and this was intended by the bookkeeper, because he carried the balance as cash on hand. Thus, at any time, it was possible to ascertain how much cash was owed to Simmons Gardens, Inc., by its agent, Bulls Realty Company.

There is no basis on the record before us for a finding of liability by appellants on a derivative claim of the United States as a preferred stockholder for the wasting of assets or for the fraudulent preference of creditors under Alabama law. There was no evidence of the wasting of asset. Neither was there any preference in light of the right of set off.

We conclude that the judgment against the appellants must be reversed and the case remanded for entry of judgment for the appellants.

**626**

GEWIN, Circuit Judge (dissenting).

In my view the trial court thoroughly understood the facts in this case and applied the correct principles of law. The facts found are amply supported by the evidence and the legal conclusions reached are supported by the facts found.

I concur with the views expressed by the District Court, United States v. Bulls, 233 F.Supp. 622 (1964), and therefore respectfully dissent.