UNITED STATES of America, Appellant,

v.

Anthony G. BROCATO, Trustee in Bankruptcy for W. P. Tinsley, d/b/a Pick & Peck Drive-In Grocery, Bankrupt, Appellee.

SMALL BUSINESS ADMINISTRATION, Appellant,

v.

John V. DENSON, Trustee in Bankruptcy for Raymond Curtis Mann, d/b/a Piggly Wiggly, Auburn, Alabama, Appellee.

Nos. 25687, 25747.

United States Court of Appeals
Fifth Circuit.

Oct. 30, 1968.

John C. Eldridge, Robert E. Kopp, Attys., Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., William Wayne Justice, Ben Hardeman, U. S. Attys., for appellants.

Robert L. Thomas, Beaumont, Tex., for appellee Brocato.

John V. Denson, pro se.

Before COLEMAN and MORGAN, Circuit Judges, and HUNTER, District Judge.

LEWIS R. MORGAN, Circuit Judge:

The facts in each of these cases are identical in all relevant respects, so for that reason they were consolidated for the purpose of this appeal. In each of these cases the bankrupt was the recipient of a deferred participation loan made by a bank, the Small Business Administration insuring the bank against loss on each of these loans. The whole dispute here concerns the question of whether the SBA is entitled to priority in the bankruptcy proceeding by virtue of Section 64(a) (5) of the Bankruptcy Act (11 U.S.C. § 104(a) (5)) and 31 U.S.C. § 191.

In order that the ruling of this Court may be understood in the proper perspec-tive the facts in each of these loan situations are as follows:

1. On July 18, 1964, William P. Tinsley, the borrower, executed a promissory note for $17,000, secured by a mortgage and other security, to the Gateway National Bank. The note was on an SBA form. It provided, *inter alia*, that the indebtedness would immediately become due and payable upon the filing of a petition in bankruptcy.

On the same date the Gateway National Bank entered into a "Guaranty Agreement (Deferred Participation)" with the SBA. This agreement on SBA form 997 set forth that the "SBA has determined that such guaranty, under the terms and conditions set forth in this Agreement, is warranted and necessary in order to benefit the borrowing small business concern." The Agreement provided that the loan would be disbursed by the bank. Prior to the first disbursement, the bank was required to have in its possession the borrower's note on an SBA form. The SBA—guaranteed portion of the indebtedness was 85%. The bank could require SBA to purchase 85% of the indebtedness if the borrower defaulted for 90 days on making any payment. Paragraph 7, "Automatic Transfer of Indebtedness", additionally provided:

The commencement of any bankruptcy proceeding * * *, resulting in the indebtedness becoming immediately due and payable under the terms and conditions of the Note, shall effectuate an automatic, simultaneous assignment and transfer of the indebtedness as evidenced by the Note and related Loan instruments from Bank to SBA, and the obligations of SBA to pay to Bank as hereinafter provided in paragraph 11 shall simultaneously arise * * *

Upon such automatic assignment the bank would "immediately" evidence such transfer by "endorsing, assigning and delivery of the Note" and related instruments to SBA and receive from SBA 85% of the amount owing on the loan. SBA also had the right at its sole option to purchase its guaranteed percentage of

the loan "if it shall be determined that such purchase is in the best interest of the Government." Purchase by the SBA of its share under any of the above provisions did not extinguish the bank's interest in the loan; upon transfer of the note to the SBA the bank received a certificate evidencing its 15% interest in the loan. The SBA and the bank were obligated to share ratably any recovery of funds made by either. If the borrower was not delinquent, the bank was entitled to receive advances from SBA at a 4½ rate of interest.

The bank accordingly disbursed the loan funds. Five months later, on December 29, 1964, Tinsley filed a voluntary petition in bankruptcy. In accordance with Paragraph 7 of the Guaranty Agreement, this effectuated "an automatic, simultaneous assignment and transfer of the indebtedness" to the SBA, and SBA's obligation to pay the bank 85% of the loan "simultaneously" arose. The note held by the bank was formally assigned to SBA on January 4, 1965.

On January 19, 1965, the SBA filed a claim for the amount of $17,000 as a secured and priority claim. The trustee recommended that the SBA's claim be allowed as a secured claim for $4,171.50 and the remaining $12,828.50 as a common unsecured claim without priority. The SBA contested the treatment of the unsecured portion of its claim. The dispute between the SBA and the trustee centered on the applicability of United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222, the trustee contending that *Marxen* meant the SBA was not entitled to priority here. The referee agreed with the trustee and ruled that SBA's unsecured claim of $12,828.50 was not entitled to priority and would only be allowed as a general claim. The referee's determination was affirmed without opinion by the district court.

2. The bankrupt, Raymond Curtis Mann, secured a loan in the amount of $60,000 from the Auburn National Bank of Auburn, Alabama, and that on February 12, 1966, the bank entered into a loan guaranty agreement with SBA whereby SBA agreed to guarantee payment of 75% of the outstanding balance on the loan. This guaranty agreement by SBA also contained a provision for "automatic transfer of indebtedness" to be caused "simultaneously" by the filing of a petition in bankruptcy. No SBA funds were advanced to the borrower or to the bank at that time. Within less than two months, on March 26, 1966, Mann filed a petition in bankruptcy. SBA filed a claim in bankruptcy court on August 5, 1966. The Referee determined the amount of the claim allowable to be $47,965.35 and on December 19, 1966, ordered that the claim "be accorded priority as provided by Section 65(a) of the Bankruptcy Act and 31 U.S.C. 191 and that same be paid by the trustee * * *" On December 23, 1966, the Referee by formal order rescinded that part of his order of December 19, 1966, according priority to the claim of the United States, and by formal order dated June 30, 1967, the Referee concluded that the SBA claim was not entitled to priority and ordered that it be allowed as an unsecured claim.

On March 26, 1966, when the bankrupt, Mann, filed his petition in this cause, the bank had not made demand upon SBA for payment of its guaranty under the guaranty clause. The note from the debtor to the bank was formally assigned by the bank to SBA on, to wit, May 10, 1966.

The District Court affirmed the Referee's ruling in denying priority to SBA and relied upon three cases for its decision, i. e., United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222 (1939), Small Business Administration v. McClellan, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960), and Bulls v. U. S., 356 F.2d 619 (5 Cir., 1966).

In our opinion, the District Court should be affirmed.

All of the authority with which this Court is familiar requires that the United States, or its agencies, have either actual legal title to the debt, or "beneficial ownership" of the debt *prior* to the filing of a bankruptcy petition.

It follows then, applying the facts in these cases to the above-quoted principles, that in order to have legal title the note and mortgage of the bankrupt must be assigned to the SBA prior to his filing of the bankruptcy petition. So, in order to have "beneficial ownership" the SBA must actually advance money to the debtor prior to the filing of the bankruptcy petition. In our view, SBA does not meet either requirement in these cases.

■ The United States Supreme Court in United States v. Marxen, 307 U.S. 200, 207, 59 S.Ct. 811, 815, 83 L.Ed. 1222, stated in a case involving the Federal Housing Administration, which was in almost an identical position as the SBA here in that it was placed in the position of a surety in guaranteeing a loan, that:

"We are of the view that Section 3466 (31 U.S.C. Section 191) is applicable to general claims in bankruptcy transferred to the United States, or to which it has become subrogated on payment, after the filing of the petition for the reason that the rights of creditors are fixed by the Bankruptcy Act as of the filing of the petition in bankruptcy. This is true both as to the bankrupt and among themselves. The assets at that time are segregated for the benefit of creditors. The transfer to the assets to someone for application to 'the debts of the insolvent, as the rights and priorities of creditors may be made to appear,' takes place as of that time."

■ Therefore, as the District Court in Alabama clearly reasoned, the Supreme Court states unequivocally that the purpose of Section 191 is to accord priority, not at the time provided by a contract between the parties, but at the time of payment of public funds. The obvious reason for this is that the purpose of the filing of a petition in bankruptcy in the first place is to leave the relationships of all parties in a status quo position at the moment of filing, and it would follow that if public funds had not been disbursed before the filing, then no priority arises.

A portion of 31 U.S.C. § 191 states that "whenever any person indebted to the United States is insolvent * * * the debt due the United States shall be first satisfied * * *." This wording clearly indicates to us that the debt must be owed the United States prior to the time of becoming insolvent, and not at any other time. The specific wording of the "automatic transfer provision" in the SBA contracts in these cases shows that the filing of the petition by the debtor "is a condition precedent to the creation of any debt to SBA."

The SBA relies upon the case of Small Business Administration v. McClellan, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200. That case is clearly distinguishable, however, from these factual situations inasmuch as when the loan was made to the debtor in the *McClellan* case, the SBA actually supplied three-fourths of the money loaned. The Supreme Court allowed the SBA priority as to its 75% interest, holding that since " 'beneficial ownership' of three-fourths of the debt for which priority is asserted *belonged to the Administration from the date of the loan,* it is immaterial that formal assignment of the note evidencing the debt was not made by the bank until after the filing of the petition."

In these cases under review, however, no prior "beneficial ownership" to which a transfer could relate back existed in behalf of SBA.

The latest pronouncement of this Court concerning a priority created under Section 191 is expressed in the case of Bulls v. U. S., 356 F.2d 619 (5 Cir., 1966), in which we held that the Federal Housing Commissioner could not assert any priority for the Federal Government until the mortgage title was actually acquired by the Federal Housing Commissioner through the foreclosure proceedings. In other words, it was not until the foreclosure that a debt was due the United States within the meaning of Section 191. *It is of interest to notice* that in the *Bulls* case, prior to bank-

ruptcy and prior to the foreclosure proceedings, the United States actually owned some preferred stock in the corporation which eventually became bankrupt. As pointed out by Appellee Denson in his well-written brief, certainly the ownership of preferred stock in the bankrupt corporation which existed prior to the filing of the bankruptcy petition, added to the United States' interest of having a Federal Housing Administration insured loan in regard to the said bankrupt corporation, which gave the United States more interest prior to bankruptcy than the SBA has in the present case prior to bankruptcy. In the Bulls case, the interest of the United States did not amount to "beneficial ownership" and the government was denied priority since the foreclosure did not occur until after the filing of bankruptcy.

 Neither do we agree with the contention of the SBA that priority under the bankruptcy law is a privilege necessary to the operation of SBA to the end that it must be granted priority on deferred participation loans regardless of the clear intent of the statutory provisions and court decisions applicable to priorities. They pointed out that unless that is the case, the SBA will not be able to make these "favored" loans in the future. In our opinion, this priority granted the United States under 31 U.S.C. 191 and Section 64(a) (5) of the Bankruptcy Act is a statutory privilege and is not a government prerogative. Small Business Administration v. McClellan, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200; United States v. State Bank of North Carolina, 31 U.S. 29, 6 Peters 29, 8 L.Ed. 308.

The SBA argues further that the claim of the United States was created simultaneously with the filing of the petition in bankruptcy. We reject this simultaneous transfer of indebtedness argument in that we fail to see how an assignee can have a better right than the assignor possessed prior to the assignment. The very wording of the contract said that the filing of a petition in bankruptcy "effectuated" or caused the transfer. So, it would follow that the debt

cannot be created simultaneously with the petition in bankruptcy. In order for the SBA to achieve priority status, the debt must exist prior to bankruptcy, not merely simultaneously with it.

Therefore, in conclusion, it appears to us that there is no privity of contract, prior to bankruptcy, between the SBA and these borrowers. The contracts between the SBA and these banks do not create a debt owing to SBA from the borrower prior to bankruptcy, nor do these contracts give the SBA "beneficial ownership" of these debts prior to bankruptcy. For these reasons, the judgment of the District Court in each of these cases is hereby affirmed.