BENTON, C.J.
As personal representative of the estate of Helen Desak, Wilma Desak appeals the order dismissing her complaint against Vanlandingham Farms, Inc. (VLFI) as time-barred. Based on the Uniform Fraudulent Transfer Act,[1] the complaint alleged that the former owner of land in Gadsden County had conveyed it to VLFI to prevent the estate’s collecting a debt from him. The Circuit Court in and for Escambia County granted VLFI’s motion to dismiss without resolving the merits of the claim, ruling that it was clear from the face of the complaint that the estate’s claim against VLFI was untimely. We reverse and remand for further proceedings.
We start from the premise that “only in extraordinary circumstances where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the statute of limitations bars the action as a matter of law, should a motion to dismiss on this ground be granted.” Rigby v. Liles, 505 So.2d 598, 601 (Fla. 1st DCA 1987). The question before the learned trial judge, and now before us, is whether it is clear from the complaint that the fraudulent transfer could, as a matter of law, “reasonably have been discovered by the claimant,” § 726.110(1), Fla. Stat. (2002), “within 1 year after the transfer.” Id.
The second amended complaint — filed on August 16, 2010 — alleged that Lawrence Taylor murdered Helen Desak in September of 2002, and that, on or about February 19, 2003, he conveyed to VLFI “certain lands and real estate located in Gadsden County, Florida, and recorded in the public records of Gadsden County Florida at OR Book 560 Page 976, Instrument No. 0301849.” The complaint alleged that Mr. Taylor deeded this land[2] to VLFI *712 with the intent to defraud the estate of Helen Desak who, the complaint alleged he knew, would become his future creditor by virtue of the civil action for wrongful death the estate has filed against him. For purposes of decision, we must assume the truth of all well-pleaded allegations in the second amended complaint.[3]
Arguing it was clear from the allegations in the complaint that appellant’s cause of action was barred with respect to the allegedly fraudulent transfer under section 726.110(1), Florida Statutes (2002), VLFI moved to dismiss. The statute provides:
A cause of action with respect to a fraudulent transfer or obligation under ss. 726.101-726.112 is extinguished unless action is brought:
(1) Under s. 726.105(l)(a), within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by-the claimant.
§ 726.110(1), Fla. Stat. (2002). The trial court dismissed the fraudulent transfer claim with prejudice, accepting VLFI’s argument that the transfer could — as a matter of law — “reasonably have been discovered by the claimant” once the deeds were recorded. Id.
The second amended complaint alleges that the transfer took place at a time which nobody disputes was more than four years before the complaint was filed. VLFI argues that the one-year savings clause period must have ended long before those four years elapsed: it argues that the “savings clause year” began to run the day the deed became part of the public record, when anybody who examined the land records in Gadsden County could have discovered the transfer. In this way, VLFI argues, the complaint itself makes incontrovertibly clear that the statute of limitations had run before the complaint was filed.
But the personal representative contends, here as below, that when she could reasonably have discovered the transfer to VLFI is a question of fact; and that, as a matter of fact, she could not “reasonably” have discovered the transfer more than a year before she filed.[4] She contends that *713 merely recording deeds (in another county) did not put her on notice in fact and did not, as a matter of law, mean that she could reasonably have discovered Mr. Taylor’s transfer to VLFI at the time the deeds were recorded.
We have found no Florida case holding that merely recording a deed that accomplishes a fraudulent transfer causes the § 726.110 limitations period to begin to run. See generally, e.g., Winn-Dixie Stores, Inc. v. Dolgencorp, Inc., 964 So.2d 261, 267 (Fla. 4th DCA 2007) (“We read the ‘notice’ provision of section 695.11 as a general description of the legal effect of recording, rather than as a statement that recording operates as notice to all persons, in all situations.”); Freligh v. Maurer, 111 So.2d 712, 714 (Fla. 2d DCA 1959). We now hold that the act of recording a deed does not without more, as a matter of law, start the “savings clause year.”
Filing deeds to real property in the office of the clerk of the circuit court in the county in which the land lies puts third persons who have reason to examine the records — subsequent purchasers or would — be lienors, for example — on constructive notice that the conveyance has occurred: “All instruments which are authorized or' required to be recorded in the office of the clerk of the circuit court of any county in the State of Florida ... and which are filed for recording ... shall be deemed to have been officially accepted by the said officer, and officially recorded, ... and at such time [as the clerk affixes the official register numbers] shall be notice to all persons.” § 695.11, Fla. Stat. (2002). Once a deed is recorded, “there is constructive notice of its contents.” Bakalarz v. Luskin, 560 So.2d 283, 286 (Fla. 4th DCA 1990). Indeed, “the purpose of recording a deed is to give notice to third parties, rather than validate an otherwise properly executed instrument between the parties.” Townsend v. Morton, 36 So.3d 865, 869 (Fla. 5th DCA 2010) (citations omitted).
Importantly in the present case, however, the estate’s fraudulent transfer claim against VLFI implicates no other creditor nor any subsequent purchaser.[5] The present appeal is part of an effort to obtain relief from VLFI, not from a third-party stranger to the allegedly fraudulent conveyance. Cf, e.g., Sweat v. Yates, 463 *714 So.2d 306, 307 (Fla. 1st DCA 1984) (“[A] deed takes effect from the date of delivery, and the recording of a deed is not essential to its validity as between the parties or those taking with notice.... The recording statute has always been primarily intended to protect the rights of bona fide purchasers of property and creditors of property owners[6] rather than the immediate parties to the conveyance.”); Fong v. Batton, 214 So.2d 649, 652 (Fla. 3d DCA 1968) (“The recordation statute, § 695.01 Fla. Stat., F.S.A., has always been primarily intended to protect the rights of bona fide purchase[r]s of property, and creditors of property owners, rather than the immediate parties to the conveyance to the property.”).
*713 (2) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under s. 726.108(l)(a), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (3), or the amount necessary to satisfy the creditor’s claim, whichever is less. The judgment may be entered against:
(a) The first transferee of the asset or the person for whose benefit the transfer was made; or
(b) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.
*714 Other courts considering the question have also concluded that recording a deed does not alone establish that a creditor could reasonably discover a fraudulent transfer. See Budhu v. Budhu, 33 Misc.3d 398, 929 N.Y.S.2d 694, 697 (N.Y.Sup.Ct.2011) (“the mere recording of a deed appears, to this Court, to be insufficient to alert a reasonably diligent person of a possible fraudulent transfer”); Bueneman v. Zykan, 181 S.W.3d 105, 111 (Mo.Ct.App.2005) (“We don’t believe that Appellants reasonably could be expected to search the recorder of deeds before they even obtained a judgment against Zykan, or before they realized their judgment was not going to be paid by Zykan.... ‘The record of an instrument is notice only to those who are bound to search for it.’ ” (citation omitted)).
Although not unanimously, the authorities distinguish between subsequent purchasers and creditors alleging fraudulent transfers. See Crescent v. White, 88 Nev. 71, 493 P.2d 1323, 1323 (1972) (holding that, where recording statute provided that a recorded conveyance “impart[ed] notice to all persons of the contents thereof; and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice,” the statute did not give “ ‘notice to all persons in all situations’ ” (citation omitted)); Villa Nat’l Bank v. Green, 478 P.2d 681, 683 (Colo.Ct.App.1970) (holding that creditor not on constructive notice until it had some type of interest in the property, because “ ‘in Colorado the record of a deed of trust or other instrument is notice only to those persons claiming under the same chain of title who are bound to search for it’ ” (quoting Greco v. Pullara, 166 Colo. 465, 444 P.2d 383, 384 (1968))); Elliott v. Goss, 250 N.C. 185, 108 S.E.2d 475, 477 (1959) (“[A] cause of action for fraud does not accrue and the statute of limitations does not begin to run until the facts constituting the fraud are known or should have been discovered in the exercise of due diligence, and the mere registration of a deed, standing alone, will not be imputed for constructive notice.” (citation omitted)). But see Hair v. Schellenberger, 966 N.E.2d 693, 697-98 (Ind.Ct. App.2012) (finding that date deed recorded was date upon which Hair could reasonably have discovered fraudulent transfer). The weight of authority supports the view that mere recording does not start the limitations period.
It is not reasonable to require a defrauded creditor to monitor the land records in all 67 counties or, indeed, outside the state, as well, as a routine practice. If there are other facts that should have put the personal representative on notice of the Gads *715 den County conveyance, they were not alleged in the complaint.
Reversed and remanded.
CLARK and MAKAR, JJ., concur.

. See § 726.101, Fla. Stat. (2002). "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) With actual intent to hinder, delay, or defraud any creditor of the debt- or. ..." § 726.105(1), Fla. Stat. (2002).

. The second amended complaint also alleged fraudulent conveyances of interests in Escam-bia County real property to Sherry Vanland-ingham on or about January 27, 2003, and to Catherine Nowlin on or about October 5, *712 2006, but these conveyances are not the subject of the appeal.

. See Curd v. Mosaic Fertilizer, LLC, 39 So.3d 1216, 1222 (Fla.2010) (“Because this case is before the Court on the trial court’s dismissal of Curd’s fourth amended complaint, we must take all the factual allegations in his complaint as true and construe all reasonable inferences from those facts in his favor.”); State Dep’t of Ins. v. First Floridian Auto & Home Ins. Co., 803 So.2d 771, 773 (Fla. 1st DCA 2001) (" 'For purposes of ruling on the motion to dismiss, the trial court was obliged to treat as true all of the amended complaint’s well-pleaded allegations.... ’ A reviewing court must likewise assume the truth of a complaint’s well-pleaded factual allegations when deciding whether dismissal of the complaint was proper.” (citations omitted)).

. She relies in particular on Segal v. Rhumbline International, Inc., 688 So.2d 397 (Fla. 4th DCA 1997). In that case the Segals sued Rhumb Line International, Inc. (Rhumb Line) and the former chairman of its board of directors. (While the case is styled ‘‘Segal v. Rhumbline International, Inc.," the body of the opinion makes repeated reference to "Rhumb Line” (two words).) In addition to their primary claim for fraud and negligent misrepresentation in connection with a subsidiary's lease of a yacht, they stated a claim for fraudulent transfer, alleging that, while Rhumb Line’s board chairman had duly perfected a security interest in certain of Rhumb Line’s assets under the UCC, he had obtained assets that were "substantially in excess” of the amount of the secured loans when the company dissolved. As creditors of the corporation, the Segals sued for the value of the excess on the theory the excess had been fraudulently conveyed from the debtor corporation to the chairman of the board. *713 The trial court granted summary judgment on grounds that the fraudulent conveyance count was barred by the statute of limitations, but the Fourth District reversed, ruling:
The Segals had four years from the filing of the UCC statement or one year from discovery of the fraudulent transfer in which to bring suit. As the Segals testified that they did not discover the transfer until 1992 and within a year amended their complaint to allege a cause of action based on the transaction, there is an issue of fact as to whether the complaint was filed within the statute of limitations which cannot be resolved by summary judgment.
Id. at 400. Here Ms. Desak contends recording the deeds, like recording the UCC statements in Segal, gave constructive notice that had legal significance, but did not start the clock on the fraudulent transfer claim.

. The statute specifically deals with subsequent, good faith purchasers for value. Section 726.109(2), Florida Statutes (2002), provides:

. "No conveyance, transfer, or mortgage of real property, or of any interest therein .. . shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law....” § 695.01(1), Fla. Stat. (2002).