[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11526
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-00166-EAK-MAP

BURTON W. WIAND,
as Receiver for Valhalla Investment
Partners, L.P.; Viking Fund, LLC; Viking
IRA Fund, LLC; Victory Fund, Ltd.; Victory
IRA Fund, Ltd.; and Scoop Real Estate, L.P.,

Plaintiff-Appellee,
Cross-Appellant,

versus

BRIAN L. MEEKER,
as Trustee for the Brian L. Meeker
Trust dtd 12/06/1991,

Defendant-Appellant,
Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(July 15, 2014)

Before HULL, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

This appeal arises out of a suit brought by Burton Wiand—the receiver for various Hedge Funds used in a Ponzi scheme run by Arthur Nadel—under the Florida Uniform Fraudulent Transfer Act (FUFTA). Wiand seeks to recover false profits that the Brian L. Meeker Trust gained through its participation in the scheme, which no one disputes was unknowing. Brian L. Meeker, in his capacity as trustee for the Meeker Trust, appeals the district court's grant of summary judgment in favor of Wiand. Wiand also cross-appeals the district court's denial of his request for prejudgment interest. After review, we affirm in part, and reverse and remand in part.

## I.

From 1999 to 2009, Arthur Nadel operated a Ponzi scheme using a number of Hedge Funds. During the operation of the Ponzi scheme, the Meeker Trust invested $1,250,000 in one of the Hedge Funds. In addition, from January 2006 through September 2007 the Trust received distributions from Nadel's scheme totaling $1,895,641.67. The Trust therefore received a net gain of approximately $645,642. The Hedge Funds' bank records indicated that these payments were made to "Brian L. Meeker, TTEE," a common shorthand for trustee.

2

At summary judgment, the parties litigated whether the Meeker Trust was entitled to setoff its gains against the losses that Meeker and his wife, Barbara Meeker, suffered in their personal accounts as a result of Nadel's Ponzi scheme. The district court concluded that the Meeker Trust was not entitled to any setoff and granted Wiand's motion for summary judgment for an amount of $645,641.67. The court also denied Meeker's cross-motion in which he asserted that, due to the statute of limitations, at least one of the transfers from the Nadel entities to the Trust should be excluded from the calculation, resulting in a net loss and thus no liability to Wiand. Lastly, the court declined to grant prejudgment interest to Wiand.

Meeker, proceeding pro se on appeal, argues that the district court erred in determining the Trust was liable to Wiand. First, Meeker argues that the losses suffered by his and his wife's personal accounts should be considered because he is the beneficiary of the Trust and she is his wife, and because he personally received the payments from the Hedge Fund in a non-titled account. Second, Meeker argues that the first $700,000 payment to the Trust may not be included in Wiand's false profit calculation because it falls outside of the FUFTA statute of limitations. Without this transfer, he argues, the Trust did not realize any profit and there would be no liability.

3

The third issue on appeal is the receiver Wiand's cross-appeal of the district court's denial of his request for prejudgment interest. Wiand argues that prejudgment interest should be awarded as a matter of law, but that even if the decision is discretionary, the district court abused its discretion in weighing the equities here.

## II.

We review a district court's decision to grant summary judgment de novo, viewing all of the evidence and its reasonable inferences in the light most favorable to the nonmoving party. Lindley v. FDIC, 733 F.3d 1043, 1050 (11th Cir. 2013). Federal Rule of Civil Procedure 56(a) states that summary judgment shall be granted if the pleadings and evidence show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## A.

Meeker's first argument is that the district court erred by not setting off the Meeker Trust's liability with the losses his and his wife's personal accounts suffered from the Nadel Ponzi scheme.[1] Setoff is the right that exists between two parties to pay off their respective debts by way of mutual deduction. Everglade Cypress Co. v. Tunnicliffe, 148 So. 192, 193 (Fla. 1933). Setoff is permitted only where there is mutuality of claims between the parties. Griffin v. Gulf Life Ins.

---

[1] Meeker also argues that the Meeker Trust account is empty and closed. But this assertion does not impact the Trust's liability to Wiand.

4

Co., 146 So. 2d 901, 903 (Fla. 1st DCA 1962).  Mutuality of claims requires that the claims exist between the same parties acting in the same capacities.  Everglade Cypress Co., 148 So. at 193.  An individual's role as trustee is legally distinguishable from his individual identity.  See Harris v. Martin, 606 So. 2d 1212, 1212–13 (Fla. 5th DCA 1992) (declining to uphold the execution of a deficiency judgment against a party in his individual capacity where the pleadings and judgment in the trial court identified him in his role as trustee).

The district court correctly determined that the Meeker Trust was not entitled to setoff its gains with the Meekers' personal losses.  The required mutuality does not exist here where Meeker incurred losses in his individual capacity in his personal account but was acting in his capacity as a trustee for the Meeker Trust account.[2]  See Everglade Cypress Co., 148 So. at 193; Harris, 606 So. 2d at 1212–13; see also In re Drexel Burnham Lambert Group, Inc., 113 B.R. 830, 847 (Bankr. S.D.N.Y. 1990) ("If a creditor's debt to his debtor arises from a fiduciary duty or in the nature of a trust, the creditor may not set off his claim against the debtor against his own liability because the parties are acting in different capacities and the debts of each side are not mutual.").  We therefore affirm the district court's denial of a setoff.

---

[2] Wiand also points out, and Meeker admits, that he and his wife did not file timely proof of claim forms for their individual accounts or the Meeker Trust account.

B.

Meeker's second argument is that the first $700,000 payment from the Nadel Hedge Funds to the Meeker Trust should not be included in calculating whether the Trust received any false profits because that payment falls outside of the four-year FUFTA statute of limitations. Without this $700,000 transfer, the Trust did not have a net gain and therefore would not be required to return any false profits to Wiand.

FUFTA provides for "a cause of action for damages in favor of a creditor against an aider or abettor to a fraudulent transaction." Freeman v. First Union Nat'l Bank, 865 So. 2d 1272, 1273 (Fla. 2004) (per curiam). In this case, Wiand was required to bring his FUFTA claim within four years after the transfer to the Trust, or, if later, within one year after he could have reasonably discovered the transfer. Fla. Stat. § 726.110(1). The latter one-year limitations period is referred to as the "savings clause." See, e.g., Desak v. Vanlandingham, 98 So. 3d 710, 713 (Fla. 1st DCA 2012). In Desak, a case involving a fraudulent transfer of an estate, a Florida Court of Appeal applied § 726.110(1)'s savings clause and held that the recording of a deed without more did not trigger the one-year limitations period. 98 So. 3d at 712–14. Although the recording of a deed constitutes constructive notice, the court reasoned that the plaintiff in that case could not reasonably have

6

been alerted to a possible fraudulent transfer by the mere act of recording.  Id. at 713–14.

Here Meeker argues that the four-year statute of limitations began to run when the transfer from the Nadel Hedge Funds to the Meeker Trust was made. This argument fails because, like in Desak, the savings clause applies.  Based on the record here, we conclude that Wiand could not have reasonably been alerted to a possible fraudulent transfer by the mere act of the transfer from the Hedge Funds to the Meeker Trust.  Rather, the one-year limitations period began to run when Wiand was appointed receiver.  Wiand v. Cloud, 919 F. Supp. 2d 1319, 1339 (M.D. Fla. 2012) (finding FUFTA claim brought within one year of receiver's appointment to be timely); see also Hunt v. Am. Bank & Trust Co., 783 F.2d 1011, 1013–14 (11th Cir. 1986) (concluding for statute of limitations purposes that receiver should at least have been able to discover potential claims from his own department's files within a few months of his appointment); In re Blackburn, 209 B.R. 4, 13 (Bankr. M.D. Fla. 1997) (applying Florida's discovery rule and finding statute of limitations for breach of fiduciary duty and usurpation of corporate opportunity claims did not begin to run until receiver's appointment).

Wiand was appointed as receiver on, at the earliest, January 21, 2009.  He then filed the original complaint on January 19, 2010, within one year of his appointment as receiver.  Because Wiand timely filed his claims within the one-

7

year savings clause period, we find no legal error in including the first $700,000 payment to the Meeker Trust in the calculation of false profits.

III.

Lastly, Wiand cross-appeals the district court's decision to deny prejudgment interest. The decision to refuse or reduce prejudgment interest is within the trial court's sound discretion, and we review that decision for an abuse of discretion. Blasland, Bouck & Lee v. City of N. Miami, 283 F.3d 1286, 1298 (11th Cir. 2002).

This Court recently addressed this same issue in Wiand v. Lee, No. 13-10448, __ F.3d __, 2014 U.S. App. LEXIS 10154 (11th Cir. June 2, 2014), which involved significantly similar legal and factual findings also arising from the Nadler Ponzi scheme. The district court in Lee denied Wiand's request for prejudgment interest for the same reasons it denied Wiand's request in the instant case. For the reasons set forth in Section II.B. of this Court's Lee opinion, we find that the district court abused its discretion in denying Wiand's request for prejudgment interest in the instant case and, therefore, reverse and remand for the lower court to apply the factors in Blasland to determine whether equitable considerations justify denying or reducing a prejudgment interest award in this case. See id., 2014 U.S. App. LEXIS 10154, at *21–27.

**AFFIRMED in part, REVERSED and REMANDED in part.**

8